988 F.2d 457
 63 Fair Empl.Prac.Cas. (BNA) 1205,
61 Empl. Prac. Dec. P 42,108
Jackey B. GRIFFITHS
v.
CIGNA CORPORATION, Marlene Graham, Individually and in her
own official capacity as head of Security with CIGNA Corp.
CIGNA Corporation and Marlene Graham, Appellants.
 No. 92-1413.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 3, 1992.
Decided March 17, 1993.
Rehearing Denied April 14, 1993.
 
 Warren M. Laddon, James B. Herman (argued), CIGNA Corp., Philadelphia, PA, for appellants.
 Alan B. Epstein (argued), Jablon, Epstein & Wolf, Philadelphia, PA, for appellee.
 Before: SLOVITER, Chief Judge, and GREENBERG and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 GREENBERG, Circuit Judge.
 
 I. Factual and Procedural Background
 
 1
 In this civil action the jury returned a verdict against the defendants-appellants CIGNA Corporation and Marlene Graham, CIGNA'S head of security, for $377,500 in favor of the plaintiff-appellee Jackey B. Griffiths on his claims for retaliatory discharge under section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), and section 5(d) of the Pennsylvania Human Relations Act ("PHRA"), Pa.Stat.Ann. tit. 43, § 955(d) (Supp.1992), and for malicious prosecution, under Pennsylvania common law. The appellants filed a motion for a new trial and an amendment of judgment which the district court denied in an order entered May 14, 1992. The appellants have appealed from that order, contending that the court improperly charged the jury both on the burden of proof on the retaliatory discharge claims and on the elements of the malicious prosecution claim. We agree and therefore will reverse the order of the district court.[1]
 
 
 2
 The germane facts as developed at the trial are as follows. Griffiths, a Jamaican immigrant, began work at CIGNA as a part-time security guard on January 2, 1985. Eventually, he was promoted to full-time security guard and assistant supervisor. Griffiths was assigned to work at a building at 1600 Arch Street, Philadelphia, referred to as the "Home Office," and at a connected building called the "Tower Building."
 
 
 3
 In February 1990, Griffiths applied for a position of shift supervisor. When he did not obtain the promotion, he concluded that Graham denied it to him on the basis of his national origin. On March 13, 1990, a day after learning that the decision not to promote him was final, Griffiths filed a charge with the Equal Employment Opportunity Commission, asserting that CIGNA had discriminated against him because of his national origin.[2] The EEOC sent notice of the charge to CIGNA's security department on or about March 16, 1990.
 
 
 4
 The day that he filed the EEOC charge, Griffiths left work early, purportedly because the stress he was suffering from being passed over exacerbated a pre-existing high-blood pressure condition. Griffiths subsequently filed a disability claim, asserting that he was disabled as a result of this condition. He never returned to work for CIGNA.
 
 
 5
 From October 1989 through March 1990, CIGNA lost property valued at approximately $105,000 through the thefts of computers from the Home Office and Tower Building. On the evening of March 12-13, Griffiths' last day of work, someone stole two computers from a locked area of the Tower Building. On March 20, 1990, Graham sent a three-page report about the thefts to the Philadelphia Police Department stating that "[i]nformation gathered concerning the latest thefts suggests that Assistant Supervisor Jackey Griffiths working in connection with a former CIGNA security officer Tony Bolton may be responsible for some if not all of the computer thefts." (Emphasis added.) The report noted that there was no sign of forced entry in the area from which the computers were stolen; Griffiths had a master key to that area; Bolton was fired and Griffiths recently was passed over for a promotion to supervisor; a check of the daily attendance sheets showed that either Bolton or Griffiths was working at the time of all the reported thefts; Bolton often called Griffiths at work; on the night of the latest computer theft Bolton's call was transferred to Griffiths at an office on the floor where the theft occurred; and two security officers assigned to Griffiths' shift stated that Griffiths habitually disappeared for three to four hours at a time in the Tower Building, taking its keys with him. The report, however, did not request that the police prosecute or arrest either Griffiths or Bolton.
 
 
 6
 Dennis Nast, the Philadelphia detective assigned to the case, interviewed Graham and other CIGNA employees about the matter. Based on these interviews and Graham's report, Nast prepared an affidavit of probable cause for a warrant for Griffiths' arrest which he submitted to the charging unit of the office of the Philadelphia District Attorney for a determination of whether the facts submitted constituted probable cause. After the District Attorney's office concluded that there was probable cause, Nast submitted the affidavit to the bail commissioner, a judicial officer of the Court of Common Pleas for Philadelphia County, who also found probable cause and thereafter issued a warrant for Griffiths' arrest. The Philadelphia police arrested Griffiths on April 13, 1990, but on April 23, 1990, the court dismissed the charges at a preliminary hearing.
 
 
 7
 On May 1, 1990, Graham sent a letter to Griffiths, who though not then reporting for work was still a CIGNA employee, instructing him to meet with CIGNA's corporate audit department to answer questions concerning the computer thefts occurring on the last night he was on duty. Griffiths, however, refused to speak to the audit department except through his attorney. The appellants then terminated Griffiths' employment on May 4, 1990, ostensibly because his failure to cooperate with the investigation of the theft constituted insubordination. On April 11, 1991, Griffiths filed this suit in the United States District Court for the Eastern District of Pennsylvania alleging claims of retaliatory discharge in violation of federal and Pennsylvania statutory law and the common law tort of malicious prosecution.[3]
 
 
 8
 At trial, Griffiths argued that the appellants falsely accused him of the thefts and fired him because he had filed the EEOC charge. Griffiths presented testimony showing that Graham did not inform the police that she knew that other employees had access to the locked areas where the computers were located, and that she had suspected another supervisor who was in the Tower Building on March 12, 1990, of having been involved in computer thefts over the previous several months. For her part, Graham testified that CIGNA fired Griffiths because he refused to cooperate with the internal investigation by the audit department. Furthermore, she denied that the EEOC charge played a role either in Griffiths' termination or her act of reporting him to the police. Indeed, Graham claimed not to have known of the employment discrimination charges until early April, several weeks after she sent her report to the police.
 
 
 9
 The court submitted the case to the jury on special interrogatories, and it found for Griffiths on both the malicious prosecution and retaliation claims awarding compensatory and punitive damages. It returned its verdict on the malicious prosecution count, notwithstanding its finding in an answer to a special interrogatory that "all of the significant facts that the [appellants] provided to the Philadelphia police [were] true." As we have indicated, the appellants have appealed from the order of May 14, 1992, denying their post-trial motions.
 
 II. Standard of Review
 
 10
 Normally, we review a district court's ruling on a motion for a new trial for abuse of discretion, but here our review is plenary as the district court's denial of the motion was based on the application of legal precepts. See Rotondo v. Keene Corp., 956 F.2d 436, 438 (3d Cir.1992); Waldorf v. Shuta, 896 F.2d 723, 737 (3d Cir.1990). Furthermore, while we ordinarily review a district court's ruling on points for charge on an abuse of discretion standard, Link v. Mercedes-Benz of North America, Inc., 788 F.2d 918, 922 (3d Cir.1986), in this case we are exercising plenary review because the appellants contend that the charge taken as a whole does not state the correct legal standard. See Savarese v. Agriss, 883 F.2d 1194, 1202 (3d Cir.1989). Thus, we will review the charge as a whole in the light of the evidence to determine if it fairly and adequately submitted the issues to the jury and we will reverse if the instructions were capable of confusing and thereby misleading the jury. See Limbach Co. v. Sheet Metal Workers Int'l Ass'n, 949 F.2d 1241, 1259 n. 15 (3d Cir.1991) (in banc).
 
 III. Discussion
 1. Malicious Prosecution
 
 11
 The appellants first maintain that the court erred in instructing the jury on the Pennsylvania law of malicious prosecution in both the charge and the special interrogatories. In particular the appellants contend that the court misstated the law in telling the jury that the appellants had a responsibility to conduct a reasonable investigation of the theft of the computers, to determine the significant facts, and to report all the facts to the police before focusing police attention on Griffiths.[4] The appellants urge that they had no obligation to investigate inasmuch as they did not file the complaint or demand Griffiths' prosecution, but only informed the police of certain information which suggested his guilt. They further argue that they could not be liable because the information they gave to the police was accurate.
 
 
 12
 We agree with the appellants' contentions. Therefore, even though the jury found in its answers to interrogatories that the appellants initiated the criminal proceedings without an honest, good faith belief that Griffiths stole the computers, and did so maliciously to retaliate against Griffiths for his EEOC charges without providing the police with all the significant facts they then knew or could have obtained through a reasonable investigation, we are constrained to reverse.
 
 
 13
 Under Pennsylvania law, which the parties agree is applicable to the malicious prosecution claim, a plaintiff must prove that the defendant (1) instituted the proceedings (2) without probable cause and (3) with actual malice and (4) that the proceedings terminated in favor of the plaintiff. Kelley v. General Teamsters, Local Union 249, 518 Pa. 517, 544 A.2d 940, 941 (1988). While the appellants do not deny that the criminal proceedings terminated in Griffiths' favor, they dispute the existence of the remaining elements. Malice has been stated to include ill-will in the sense of spite, the use of a prosecution for an extraneous, improper purpose, or the reckless and oppressive disregard of the plaintiff's rights. Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir.1988); Hugee v. Pennsylvania R. Co., 376 Pa. 286, 101 A.2d 740, 743 (1954). Malice may be inferred from the absence of probable cause. Kelley, 544 A.2d at 941; Hugee v. Pennsylvania R. Co., 101 A.2d at 743. Probable cause is proof of facts and circumstances that would convince a reasonable, honest individual that the suspected person is guilty of a criminal offense. Bruch v. Clark, 352 Pa.Super. 225, 507 A.2d 854, 857 (1986). However, before a court determines whether the plaintiff has demonstrated the absence of probable cause and the presence of malice, it is appropriate for it to address the more fundamental question of whether the defendant either directly instituted the proceedings against the plaintiff or can be charged with the responsibility for the institution of the proceedings. Therefore, we turn our attention to the jury charge in connection with the evidence regarding this element of a claim for malicious prosecution.
 
 
 14
 Pennsylvania courts have considered a defendant's responsibility for the initiation of proceedings element of malicious prosecution by referring to section 653, comment g of the Restatement (Second) of Torts. See Campbell v. Yellow Cab Co., 137 F.2d 918, 921 (3d Cir.1943); Davis v. Equibank, 412 Pa.Super. 390, 603 A.2d 637, 640 (Ct.1992); Hess v. County of Lancaster, 100 Pa.Cmwlth. 316, 514 A.2d 681, 683 (1986).[5] Comment g distinguishes between situations in which a private individual files a complaint or demands a prosecution and those in which he merely provides information to the police. Comment g makes clear that in the latter case a private individual who does not knowingly provide false information is not responsible for the institution of the proceedings, and thus cannot be held liable for malicious prosecution as he need not have had a reasonable basis for making the accusation. See also Campbell v. Yellow Cab Co., 137 F.2d at 921 (holding person who merely identifies suspect and "does not otherwise attempt to influence the officers in the exercise of their discretion as to the prosecution of the person identified [if] the person making the identification believes it to be correct ... is not deemed the instigator of criminal proceedings subsequently begun by the police ..."); Davis v. Equibank, 603 A.2d at 640 (refusing to permit imposition of liability on witness for negligent misidentification of robbery suspect).
 
 
 15
 In this case, the court in its charge to the jury and special interrogatories did not apply these principles. Rather it apparently assumed that the facts supported a finding that the appellants initiated the proceedings. In charging the jury, the court commented:
 
 
 16
 The evidence seems clear in this case that the criminal proceedings, although formally filed by the Philadelphia Police, were initiated and instigated by CIGNA, although of course that would be a matter for you to decide.
 
 
 17
 Yet there was no evidence that the appellants directed, requested, or pressured Nast to prosecute Griffiths. Nast testified that he sought the arrest warrant on his own initiative because of the information he obtained from Graham and from his own investigation. Neither Nast's testimony nor Graham's memorandum to the police indicates that the appellants demanded Griffiths' prosecution or deprived the police of their discretion with respect to the institution of criminal proceedings. In fact, Graham's memorandum did not even accuse Griffiths of the thefts. Rather it only "suggests" that he "may" have been responsible and thus was doubly equivocal. It is true that Nast testified that if he had known that other CIGNA employees had access to the area where the computers were stored, he would have investigated further before seeking a warrant for Griffiths' arrest. But the appellants did not conceal this additional information for it is undisputed that Nast did not ask Graham about other suspects.
 
 
 18
 In these circumstances, inasmuch as the appellants did not file a complaint in court and did not direct the police to prosecute Griffiths, the only question that the jury should have answered was whether the appellants knowingly provided false information to the police. Therefore, as the jury found that the facts Graham furnished were true, the appellants as a matter of law cannot be deemed to have been responsible for the initiation of the criminal proceeding against Griffiths. It accordingly follows that they cannot be liable for failing to conduct a reasonable investigation. The district court, therefore, should not have permitted the jury to answer the remaining interrogatories on the malicious prosecution claim and to return a verdict on the basis of the answers to those interrogatories. Rather, the court should have told the jury that if it determined that the appellants gave accurate information to the police, its deliberations on the malicious prosecution claim were over and the other interrogatories on that claim did not have to be answered.
 
 
 19
 In reaching our result, we do not ignore the cases which Griffiths cites for the proposition that a private individual, in certain instances, must conduct a reasonable investigation to satisfy the probable cause requirement. But these cases are not helpful to Griffiths because in this case the appellants were entitled to a judgment in their favor without regard for whether they had probable cause, for they were not responsible for the institution of the proceedings against Griffiths. Indeed, these cases reinforce our conclusion that a person is required to have a reasonable basis for seeking the prosecution only if the person actually swears out the complaint or is responsible for the initiation of the proceedings by explicitly directing that a prosecution be started against the accused. See, e.g., Biggans v. Hajoca Corp., 94 F.Supp. 593 (E.D.Pa.), aff'd, 185 F.2d 982 (3d Cir.1950) (defendant hired private detectives and brought charges against plaintiff); Kelley v. General Teamsters, Local Union 249, 544 A.2d at 941 (charges brought against plaintiff by attorney retained by defendant union); Neczypor v. Jacobs, 403 Pa. 303, 169 A.2d 528 (1961) (defendant was police officer who, after being involved in an automobile accident with plaintiff, personally arrested plaintiff); Hugee v. Pennsylvania R. Co, 101 A.2d 740 (plaintiff was arrested by defendant railroad's employees); Miller v. Pennsylvania R. Co., 371 Pa. 308, 89 A.2d 809 (1952) (same); Byers v. Ward, 368 Pa. 416, 84 A.2d 307 (1951) (defendants caused warrants to be issued for plaintiffs' arrests on charges of stealing coal); Wainauskis v. Howard Johnson Co., 339 Pa.Super. 266, 488 A.2d 1117 (1985) (defendant filed charges after the police informed it that they would not undertake the prosecution); Shelton v. Evans, 292 Pa.Super. 228, 437 A.2d 18 (1981) (defendant caused complaint to be signed for plaintiff's arrest).
 
 
 20
 Griffiths argues that, notwithstanding Nast's freedom of action, we should uphold the denial of the order of May 14, 1992, based on the jury's finding in its answers to the special interrogatories. Griffiths notes that although the jury indicated on the special verdict sheet that the facts reported in Graham's memorandum were true, the jury also found that the appellants lacked a good faith belief in his guilt, deliberately did not disclose significant information, and reported him out of malice and to retaliate for his filing the EEOC charge. The jury was not called upon to identify the omitted information, but the record would support a finding that the omitted information was that other CIGNA employees had master keys which would have allowed them access to the secured areas from which the computers were stolen and that Graham had previously suspected one of these employees. Thus, Griffiths argues that even in a case in which the police prosecute an individual based on accurate information supplied by a private person, that person still can be liable for malicious prosecution if she did not believe in the guilt of the accused and failed to provide information the police reasonably might have needed.
 
 
 21
 Of course, the short answer to Griffiths' contention is that these jury findings are simply not germane and should never have been made, inasmuch as the facts in Graham's report to the police were true. Yet we have an unusual situation here because the jury did make the seemingly inculpatory findings. But these findings cannot help Griffiths for we are convinced that the Pennsylvania Supreme Court would not allow the imposition of liability for malicious prosecution on a defendant whose connection with the prosecution has been limited to supplying truthful information to the police. Furthermore, there is no requirement under Pennsylvania law that the informant believe in the guilt of the suspect. We recognize that some cases have stated that a private person may face liability if he did not have a good faith belief in the suspect's guilt, or did not disclose material information, but those cases do not speak to the situation of a private person merely supplying accurate information to the police. Instead, those cases concerned persons who either knowingly provided false information, Byers v. Ward, 84 A.2d at 309 (defendants accused of providing false testimony and documentary evidence), or actually initiated the prosecution. Wainauskis v. Howard Johnson Co., 488 A.2d at 1123 (upholding verdict against initiator where jury "could have reasonably found that appellant's employees withheld material evidence and failed to make a full and fair disclosure of all relevant facts to the prosecuting authorities"); Miller v. Pennsylvania R. Co., 89 A.2d at 811 (quoting Byers v. Ward: "Probable cause does not depend on the state of the case in point of fact but upon the honest and reasonable belief of the party prosecuting.") (emphasis added); Simpson v. Montgomery Ward & Co., 354 Pa. 87, 46 A.2d 674, 678 (1946) (requiring honest, reasonable belief of guilt on the part of the person initiating the prosecution); Hubert v. Alta Life Ins. Co., 136 Pa.Super. 147, 7 A.2d 98, 101 (1939) (where defense to malicious prosecution suit is the following of advice of counsel, defendant "must show ... that he made a full and fair disclosure of the facts to counsel"); Biggans v. Hajoca Corp., 94 F.Supp. at 598 (same).
 
 
 22
 It is understandable that when a person initiates a prosecution, her lack of a good faith belief in the accused's guilt and her failure to disclose material information are relevant considerations for determining whether she had probable cause. But, it is another matter where a private individual merely communicates information suggesting guilt to the police. Sometimes a private individual reporting information to the police will not have a well-formed belief in the suspect's guilt, but instead will be aware only of some facts that might point to that suspect. For instance, in reporting a robbery suspect, a witness might not be able to state with certainty that the suspect perpetrated the crime, but might be able to state only that the suspect resembles the perpetrator. Similarly, a witness or victim deliberately might omit reporting certain facts to the police in the belief that these facts are insignificant. Indeed, an informer might report information to the prosecuting authorities indicating that a person may have committed a crime, even though the informer does not believe the suspect to be guilty because of her personal knowledge of the suspect's character.
 
 
 23
 We think that the Supreme Court of Pennsylvania would hold that the duty falls on the police and the prosecuting authorities, and not on a private individual supplying information, to determine what are the significant facts in an investigation. Accord Koski v. Vohs, 137 Mich.App. 491, 358 N.W.2d 620, 627 (1984), rev'd on other grounds, 426 Mich. 424, 395 N.W.2d 226 (1986) (holding officer's incident report that did not fully disclose facts to prosecutor did not cause prosecution because prosecutor conducted independent investigation and decided to prosecute based on his own findings). Thus, an informant has neither a duty to consider what information the police reasonably might need to conduct a complete investigation nor a duty to be certain that a suspect is guilty before giving any facts that would be helpful to the police.
 
 
 24
 A requirement that a private party have a duty beyond reporting information inevitably would discourage persons from imparting their suspicions to the police and in some cases effectively would shift the duty of criminal investigation from law enforcement professionals to the private individuals. Furthermore, imposition of such a duty cannot be reconciled with the recognition of the Pennsylvania courts that in balancing the conflicting interests of society in law enforcement on the one hand and the individual in freedom from false accusation on the other, "[c]learly, the interest in preservation of the public order is 'the more important of the conflicting public policies.' " Kelley v. General Teamsters, 544 A.2d at 940 (quoting Miller, 89 A.2d at 809). Thus, we hold that when a person supplies accurate information to the police, that person, regardless of her motives and her actions in withholding other information, cannot be regarded as being responsible for the institution of criminal proceedings, so long as the police retain the complete discretion in determining whether to prosecute, and so long as that person does not conceal additional information requested by the police. Therefore, the jury's findings to the special interrogatories on which Griffiths relies, though admittedly disturbing, simply established that the appellants acted with malice and without probable cause. But they did not establish that the appellants were responsible for the institution of the proceedings. Accordingly, we must reverse the judgment on the malicious prosecution claim. Of course, that claim will not be retried on the remand, for the appellants cannot be liable to Griffiths for malicious prosecution.[6]
 
 2. Retaliatory Discharge Claim
 
 25
 The appellants next urge that the district court's jury instructions with respect to the retaliatory discharge claim imposed a lesser burden of proof on Griffiths than the controlling law requires.[7] In particular, the appellants take exception to the court's charge on the grounds that it impermissibly allowed the jury to find them liable if Griffiths proved that retaliation was only one of the reasons for his termination.[8] Thus the court told the jury that CIGNA would be liable if retaliation was "a motivating factor" or "one of the reasons" for Griffiths' discharge. The appellants maintain that in an employment discrimination case the court must charge that the improper motive was the "but for" cause of the adverse employment action, meaning that the discriminatory motive was the sole cause or the determinative factor.
 
 
 26
 Section 704(a) of Title VII forbids an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation ... under this subchapter." 42 U.S.C. § 2000e-3(a). Similarly, under section 5(d) of the PHRA it is unlawful "[f]or any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge ... under this act." Pa.Stat.Ann. tit. 43, § 955(d) (Supp.1992). Under both statutes, to establish that a discharge was retaliatory, a plaintiff must show that (1) he engaged in a protected activity; (2) he was discharged subsequent to or contemporaneously with such activity; and (3) there is a causal link between the protected activity and the discharge. Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir.1989), cert. denied, 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990); Consumers Motor Mart v. Human Relations Comm'n, 108 Pa.Cmwlth. 59, 529 A.2d 571, 575 (1987).[9] To establish that activity is protected under Title VII, a plaintiff need not prove the merits of the underlying discrimination complaint, but only that "he was acting under a good faith, reasonable belief that a violation existed." Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir.1990).
 
 
 27
 The order and allocation of burdens of proof in retaliation cases follow the standards established for Title VII claims in general. See Waddell v. Small Tube Products, Inc., 799 F.2d 69, 73 (3d Cir.1986). However, these standards will vary depending on whether the suit is characterized as being "a pretext" or "mixed motives" case. Price Waterhouse v. Hopkins, 490 U.S. 228, 246-48, 109 S.Ct. 1775, 1789, 104 L.Ed.2d 268 (1989); Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 521-22 (3d Cir.1992); Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1180-81 (2d Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). In pretext cases, the analysis erected by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and subsequently refined in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), applies, whereas in mixed motives cases the analysis developed in Price Waterhouse v. Hopkins applies.
 
 
 28
 In a pretext case, the employee argues that the employer's facially legitimate reason as stated for the employment decision was false and thus was not the real reason for the decision. "[T]he premise of [a pretext case] is that either a legitimate or an illegitimate set of considerations led to the challenged decision." Price Waterhouse, 490 U.S. at 247, 109 S.Ct. at 1789; see also Ezold, 983 F.2d at 522; Lockhart v. Westinghouse Credit Corp., 879 F.2d 43, 49 n. 7 (3d Cir.1989) (noting issue in pretext case is " 'whether illegal or legal motives, but not both, were the "true" motives behind the decision' " (quoting NLRB v. Transportation Management Corp., 462 U.S. 393, 400 n. 5, 103 S.Ct. 2469, 2473 n. 5, 76 L.Ed.2d 667 (1983)); Sorba v. Pennsylvania Drilling Co., 821 F.2d 200, 202 (3d Cir.1987) (holding that to prevail in a pretext suit, the plaintiff must "prove by a preponderance of the evidence that the proffered reasons were not the employer's true reasons"), cert. denied, 484 U.S. 1019, 108 S.Ct. 730, 98 L.Ed.2d 679 (1988). In contrast, a mixed motives case involves proof that the adverse employment decision resulted from a mixture of legitimate reasons and prohibited discriminatory motives. In such a case, the plaintiff does not argue that the legitimate motives articulated by the employer did not motivate the employment decision. Rather the plaintiff contends that additional, improper motives played a role in causing that decision. Price Waterhouse, 490 U.S. at 241-45, 109 S.Ct. at 1786-88.
 
 
 29
 In both pretext and mixed motive cases, the plaintiff has the initial burden to establish a prima facie case of employment discrimination. In a pretext case, once a plaintiff makes the prima facie case, the burden of going forward shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment decision. Burdine, 450 U.S. at 252-55, 101 S.Ct. at 1093; Ezold, 983 F.2d at 522-23; Bellissimo v. Westinghouse Elec. Corp., 764 F.2d 175, 179 (3d Cir.1985), cert. denied, 475 U.S. 1035, 106 S.Ct. 1244, 89 L.Ed.2d 353 (1986), abrogated on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775. If the defendant articulates, through admissible evidence, a legitimate non-discriminatory reason for the discharge, any presumption of discrimination drops from the case, and the plaintiff then must satisfy the ultimate burden of proving discrimination "by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256, 101 S.Ct. at 1095; Ezold, 983 F.2d at 522-23; Bellissimo, 764 F.2d at 179.[10] Thus, in a pretext case the defendant, rather than attempting to prove an affirmative defense, supplies an explanation.
 
 
 30
 By contrast, in a mixed motive case if the plaintiff meets his initial burden to establish a prima facie case of employment discrimination, the defendant may avoid liability by establishing an affirmative defense. Therefore if a plaintiff in a mixed motives Title VII case establishes a prima facie case that the discriminatory motive was a "motivating" or a "significant" factor in the employment decision, the defendant may avoid liability by proving that it would have made the same decision even if the forbidden consideration had played no role in the employment determination. Price Waterhouse, 490 U.S. at 243-44, 109 S.Ct. at 1787-88; Ezold, 983 F.2d at 521-22; Lockhart, 879 F.2d at 49 n. 7.[11]
 
 
 31
 Mixed motives and pretext cases also differ in what the respective plaintiffs must show to shift a burden to the defendant. It is clear that a pretext plaintiff does not face an onerous hurdle in establishing a prima facie case as he may rely on either circumstantial evidence, Burdine, 450 U.S. at 253-54, 101 S.Ct. at 1094, or on direct evidence of discrimination. See Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 621-22, 83 L.Ed.2d 523 (1985); see also Billet v. CIGNA Corp., 940 F.2d 812, 816 (3d Cir.1991).[12] However, in Ezold we recognized that "[t]here is some uncertainty in the law about the sort of evidence a plaintiff must show" to establish a prima facie mixed motives case, Ezold, 983 F.2d at 522 (citing Tyler, 958 F.2d at 1183) and thereby shift the burden of proof to the employer. At least some of the courts which have allowed a plaintiff to establish a mixed motives case through circumstantial evidence recognize that such evidence must be different in kind from the circumstantial evidence supplied under the McDonnell/ Burdine shifting burden analysis. For example, in Ostrowski v. Atlantic Mut. Ins. Cos., 968 F.2d 171, 182 (2d Cir.1992), the court stated that the circumstantial evidence "must be tied directly to the alleged discriminatory animus." Thus,
 
 
 32
 purely statistical evidence would not warrant [shifting the burden]; nor would evidence merely of the plaintiff's qualification for and the availability of a given position; nor would 'stray' remarks in the workingplace by persons who are not involved in the pertinent decisionmaking.
 
 
 33
 Id. Instead, the Ostrowski court suggested that a plaintiff could shift the burden to the defendant through such evidence as "policy documents or statements of a person involved in the decisionmaking process that reflect a discriminatory or retaliatory animus of the type complained of in the suit." Id. See also Kirschner v. Office of the Comptroller, 973 F.2d at 93 (circumstantial evidence sufficient if "tied directly to" discriminatory animus).
 
 
 34
 We agree with the court in Ostrowski that at the very least "[n]ot all evidence that is probative of discrimination will entitle the plaintiff to [shift the burden]" to the defendant under Price Waterhouse. 968 F.2d at 181. At a bare minimum, a plaintiff seeking to advance a mixed motive case will have to adduce circumstantial evidence "of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude." Id. at 182. If "that evidence is sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision, the jury should be instructed that if it does draw that inference the plaintiff is entitled to recover unless the employer has established by a preponderance of the evidence that the employer would have taken the same action without consideration of the impermissible factor." Id. We need not address in further detail what sort of circumstantial evidence must be presented, as we are satisfied, for the reasons we explain below, that Griffiths has failed to submit any evidence that can fairly be said to "directly reflect" the alleged retaliatory motive for his termination by the appellants.[13]
 
 
 35
 We must consider within the foregoing framework the appellants' contention that the district court erred in instructing the jury that retaliation only need have played a motivating role in the decision to terminate Griffiths. Prior to Price Waterhouse, there was some inconsistency within this circuit as to the level of causation a plaintiff must demonstrate to prevail on claims of employment discrimination. We have on occasion used the phrase "but for" not only to suggest that a plaintiff must show a causal nexus between the discriminatory motive and the employment action, but also to describe the level of causation required. But a close reading of our cases demonstrates that we have not used the "but for" terminology consistently. In Lewis v. University of Pittsburgh, 725 F.2d 910 (3d Cir.1983), cert. denied, 469 U.S. 892, 105 S.Ct. 266, 83 L.Ed.2d 202 (1984), the case upon which the appellants primarily rely, we rejected the plaintiff's contention that she had to prove that race was only a "motivating" factor or a "substantial" factor for the defendant-employer's refusal to promote her. Rather, we required proof of "but for" causation in the sense that race played "the determinative" factor in the employment decision. 725 F.2d at 915-19. Although we never expressly have overruled Lewis, in Bellissimo, 764 F.2d at 179 n. 1, we seemed to contradict Lewis by stating:
 
 
 36
 The 'but for' test does not require a plaintiff to prove that the discriminatory reason was the determinative factor, but only that it was a determinative factor. See Smithers v. Bailar, 629 F.2d 892, 898 (3d Cir.1980) ('a plaintiff need not prove that [the discriminatory reason] was the employer's sole or exclusive consideration, but ... he must prove that [the discriminatory reason] made a difference in deciding the promotion, retention, or discharge'). Interpreting Title VII to require proof of 'the determinative factor' is inconsistent with the 'but for' causation test, insofar as plaintiff would be required to show that the discriminatory motive was the sole reason for the action taken. More than one 'but for' cause can contribute to an employment decision, and if any one of those determinative factors is discriminatory, Title VII has been violated. See Lewis v. University of Pittsburgh, 725 F.2d at 917 n. 8.
 
 
 37
 However, in Roebuck v. Drexel University, 852 F.2d 715, 726 (3d Cir.1988), we reiterated the "but for" language by reference to Lewis. Yet, in Bruno v. W.B. Saunders Co., 882 F.2d 760, 764 (3d Cir.1989), we stated that a plaintiff-employee in an ADEA case has the burden of persuading the fact finder whether age was "a determinative factor." See also Billet v. CIGNA Corp., 940 F.2d at 816 (using "a determinative factor"); Blum v. Witco Chemical Corp., 829 F.2d 367, 373 (3d Cir.1987) (same); Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 897 (3d Cir.1987) (in banc) (stating plaintiff in ADEA case "need not prove that age was the employer's sole or exclusive consideration, but must prove that age made a difference in the decision").
 
 
 38
 The Supreme Court has now clarified the issue. After Price Waterhouse, it is clear in mixed motives cases that the plaintiff need not prove that the discriminatory motive was the sole consideration which led to an adverse employment decision, but only that the discriminatory motive made a difference in that decision. Accordingly, in a mixed motives case a correct jury charge on causation may employ such phrases as "a motivating factor," "a significant factor" or "a determining factor" in describing the role the discriminatory motive plays.[14]
 
 
 39
 However, the plurality in Price Waterhouse specifically noted that the analysis in pretext cases remains unchanged. Price Waterhouse, 490 U.S. at 245, 109 S.Ct. at 1788. Thus, while we recognize that in our pretext cases we have stated in passing, without focusing on the matter, that the discriminatory motive need not be the sole factor causing the employment decision, see, e.g., Gray v. York Newspapers, Inc., 957 F.2d 1070, 1079 (3d Cir.1992); Bruno, 882 F.2d at 764; Chipollini, 814 F.2d at 897, it is clear that in pretext cases the claim is that the discriminatory motive was the sole cause of the employment action and therefore it is inappropriate to state that the plaintiff only need show that the discrimination played "a motivating" or "a substantial" role.
 
 
 40
 Inasmuch as the characterization of a discrimination case obviously affects the allocation of proof, "[a]t some point in the proceedings, of course, the District Court must decide whether a particular case involves mixed motives." Price Waterhouse, 490 U.S. at 247 n. 12, 109 S.Ct. at 1789 n. 12. A court will categorize a case as mixed motives where the plaintiff can "satisfy the fact finder that it is more likely than not that a forbidden characteristic played a part in the employment decision." Id. It is evident from the jury charge in this case, that the district court did not make such a determination. Instead, the court simply combined a mixed motive charge with a pretext charge. For example, the court told the jury that it could consider the employer's explanations as "a pretext or a sham and that in actuality, at least one of the motivating factors was retaliation against him, even though there may have been other valid reasons" for the termination.[15] (Emphasis added.)
 
 
 41
 We are satisfied from the record, however, that this is a pretext case, as the only evidence of retaliation that Griffiths offered were the inferences drawn from the fact that the appellants terminated him shortly after he filed the EEOC charge. This sort of evidence falls in the same category as the types of evidence that the court in Ostrowski described as insufficient to demonstrate a prima facie mixed motives case--i.e. purely statistical evidence or evidence of the plaintiff's qualifications or evidence of "stray" remarks in the workplace by persons not involved in the employment decisionmaking. Thus, although the evidence submitted by Griffiths might satisfy the requirements for making a prima facie retaliatory discharge case generally, it does not meet the test, under any possible standard, for establishing a mixed motives case. As this case properly is characterized as a pretext case, the court should not have charged the jury that retaliation could be only "a motivating factor" or "one of the reasons" for Griffiths' discharge.
 
 
 42
 Moreover, even if we could categorize this case as a mixed motives case, the court still gave an incorrect charge by neglecting to tell the jury of the appellants' affirmative defense that they would have discharged Griffiths quite aside from any motive to retaliate against him. While the court did instruct the jury that the appellants would not be liable if they terminated Griffiths for reasons other than to retaliate against him, this instruction was given in the context of an instruction which effectively required the jury to consider Griffiths' and the appellants' contentions as mutually exclusive, for the instruction related to the pretext issue rather than to an affirmative defense. Accordingly, the charge did not advise the jury that the appellants' lawful motivation could be a defense even if the appellants also were motivated unlawfully. Clearly appellants were prejudiced by this charge, and we will therefore reverse the judgment of the district court and remand for a new trial on the retaliation claims, as a pretext case, under federal and state law.
 
 IV. Conclusion
 
 43
 In view of our conclusions, we will reverse the order of May 14, 1992, and will remand the case to the district court for entry of judgment in favor of the appellants on the malicious prosecution claim and for the holding of a new trial on the retaliation claims.
 
 
 44
 SEITZ, Circuit Judge, concurring and dissenting.
 
 
 45
 I join in the opinion of the court granting a new trial on plaintiff's retaliatory discharge claim.
 
 
 46
 I dissent from the disposition of the malicious prosecution claim by the majority because I disagree with its prophecy as to the controlling principle of Pennsylvania law. In Kelley v. General Teamsters, Chauffeurs, and Helpers, Local Union 249, 518 Pa. 517, 544 A.2d 940 (1988), the court stated the requirements of such an action:
 
 
 47
 A cause of action for malicious prosecution has three elements. The defendant must have instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of the plaintiff.
 
 
 48
 Id. at 941 (citing Miller v. Pennsylvania R.R. Co., 371 Pa. 308, 89 A.2d 809, 811 (1952)).
 
 
 49
 The initial requirement is that plaintiff show that the defendant instituted the proceedings against the plaintiff. The majority concludes that plaintiff failed to make this showing. I do not agree.
 
 
 50
 The Pennsylvania courts have adopted the Restatement (Second) of Torts § 653 in formulating their law of malicious prosecution. Neczypor v. Jacobs, 403 Pa. 303, 169 A.2d 528 (1961). Under that section a defendant who did not formally commence the proceedings may, nevertheless, be held to have initiated the proceedings under certain circumstances. I turn to that issue.
 
 
 51
 One of the ways a plaintiff may be held to have initiated such proceedings is to show "that the information furnished by him upon which the official acted was known to be false." Restatement (Second) of Torts § 653 cmt. g (1977). This limitation on the general non-liability rule flows from the reasonable premise that a public official who is provided false information is unable intelligently to exercise his or her discretion to decide whether to prosecute. It follows, in my view, that if it can reasonably be found that material information is deliberately withheld by a private individual when he or she provides information about possible criminal activity of an identified individual, such action amounts to knowingly supplying false information. In such a case that individual is responsible for having initiated the proceedings and thus fulfills that required element of a malicious prosecution action.
 
 
 52
 While the Pennsylvania courts have apparently not yet addressed the position I take here, I predict that the Supreme Court of Pennsylvania would adopt it. I reach this conclusion first because of the inherent logic of such a reading of the general rule. Truth can be distorted as readily by omission as by commission. Second, several other state courts have recognized such an interpretation of Section 653. Thus, in Hirth v. Hall, 96 N.M. 58, 60, 627 P.2d 1257, 1259 (Ct.App.1981), the court relied on the Restatement in vacating an order granting summary judgment on a malicious prosecution claim where there was a genuine issue of material fact as to whether "defendant furnished false information by not disclosing ... several relevant aspects of the dispute...."
 
 
 53
 Similar support for the same legal proposition is found in Rose v. Whitbeck, 277 Or. 791, 562 P.2d 188, 191, reh'g denied and opinion modified, 278 Or. 463, 564 P.2d 671 (1977), where in discussing the Restatement, the court stated that "[t]his rule contains the limitation that the defendant ... did not withhold information...." Additionally, in Gustafson v. Payless Drug Stores Northwest, Inc., 269 Or. 354, 525 P.2d 118, 123-24 (1974), in discussing the Restatement, the court stated that "[t]he same rule applies if the private person knowingly fails to furnish information which the jury could find the private person knew was material to action by the official." This interpretation of the general rule was also recognized in Thomas v. Cisneros, 596 S.W.2d 313, 316-17 (Tex.Civ.App.1980) (affirming a judgment for defendant after finding that full and fair disclosure was made, relying on the Restatement as stating the reasoning behind this requirement).
 
 
 54
 In reaching its conclusion, the majority states that "when a person supplies accurate information to the police, that person, regardless of her motives and her actions in withholding other information, cannot be regarded as being responsible for the institution of criminal proceedings ... so long as that person does not conceal additional information requested by the police." Majority Opinion at 467 (emphasis added). I cannot agree that this is a correct prediction of Pennsylvania law in the present circumstances. I reiterate my belief that the Supreme Court of Pennsylvania would conclude that knowingly withholding material information when communicating to a public official another's supposed criminal misconduct, of which the official is ignorant, amounts to knowingly providing false information within the intent of the language of the Restatement.
 
 
 55
 From my prospective the limitation on Pennsylvania law imposed by the majority--concealment of additional information requested by police--suffers from at least two important infirmities in the present context. First, it severely dilutes the importance of a person's obligation not to deliberately cause his or her allegation to be viewed by the police in a false light. After all, triggering an official criminal inquiry toward a particular individual has important traumatic consequences for that person. Second, the limitation imposed by the majority is dependent on the happenstance that the individual initiating the communication is asked the "right" questions by the police. I fully appreciate the importance of the law enforcement considerations noted by the majority, as well as the jaundiced judicial view of this type of action. Nevertheless, I believe Pennsylvania law provides a legal remedy for citizens victimized by the type of calumny alleged here.
 
 
 56
 I turn now to the evidence to determine whether it was sufficient to create a jury issue as to whether material information was deliberately withheld by defendant's agent in her report to the police.
 
 
 57
 As noted in the majority opinion, the record shows that many computers were stolen from the offices of the defendant during 1989 and 1990. On March 21, 1990, after the thefts which had occurred in the preceding week, Graham, defendant's director of security, gave a three page letter to the Philadelphia Police Department. She stated that "[i]nformation gathered concerning the latest thefts suggests that Assistant Supervisor Jackey Griffiths [plaintiff] working in connection with a former CIGNA security officer Tony Bolton may be responsible for some if not all of the computer thefts."
 
 
 58
 Graham's report to the police did not mention that, to her knowledge, other employees had unsupervised access to the locked areas where the stolen computers were located; that other employees had access to master keys that unlocked secured areas where computers were kept; and that she had suspected another identified supervisor of having been involved in computer thefts over the previous several months.
 
 
 59
 I believe the evidence clearly was sufficient to create a jury issue as to whether defendant, through its agent, can be held responsible for initiating the proceedings. The same is true of Graham's motivation in sending the report.
 
 
 60
 It is not amiss to note that the police detective who received the report testified that he would have conducted additional investigations before seeking an arrest warrant had he known of the foregoing undisclosed information.
 
 
 61
 I next consider the other elements of a malicious prosecution action. Plaintiff must show that the proceedings were initiated without probable cause.[1] The withheld information that I have identified was evidence of the absence of probable cause. Furthermore, and of crucial significance is the following concession in defendant's reply brief:CIGNA does not argue on this appeal that the evidence did not support the jury's findings and CIGNA's argument concerning probable cause relates only to how the court utilized the jury in deciding the issue.
 
 
 62
 I am satisfied that there was sufficient evidence for a lack of probable cause finding to be made here.
 
 
 63
 Despite my conclusion that plaintiff's evidence was sufficient to entitle plaintiff to go to trial on the malicious prosecution claim, I believe that the pertinent instructions and interrogatories at the trial contained legal errors. First, the instruction that defendant had a duty of reasonable investigation before sending the report to the police is contrary to Pennsylvania law and the Restatement. Consequently, the district court placed an unwarranted burden on defendant that could well have improperly influenced the jury.
 
 
 64
 Second, regardless of the district court's post-trial ruling finding that there was a lack of probable cause, I believe the interrogatories and instructions directed to this issue by the district court erroneously permitted the jury to decide the lack of probable cause issue.
 
 
 65
 Both parties rely on our decision in Thomas v. E.J. Korvette, Inc., 476 F.2d 471, 475-76 (3d Cir.1973), as establishing that under Pennsylvania law, where the jury might confuse the issue of guilt and innocence with lack of probable cause, the court must determine the issue of probable cause based on factual findings made by the jury.[2] Thus, it was for the jury to make the relevant factual findings and then for the district court, based thereon, to decide whether the requisite absence of probable cause was shown. In consequence, the district court's submission of that determination to the jury was error under Thomas.
 
 
 66
 The next requirement of plaintiff's claim is to show malice. If probable cause is absent, malice may be inferred, presumably by the jury.[3] See Kelley, 544 A.2d at 941. Other evidence relevant to this issue would also be considered in a retrial. Thus, for me, resolution of the malice issue would be for the fact finder. The final element of plaintiff's claim is satisfied here because it is undisputed that the proceedings terminated in plaintiff's favor.
 
 
 67
 The majority reverses the judgment for plaintiff on the malicious prosecution claim and directs the entry of judgment for the defendant. I believe the trial errors only entitle defendant to a new trial rather than the entry of judgment in its favor. I say this because the plaintiff fulfilled the evidentiary requirements to be entitled to go to trial on his claim. Thus, I dissent.
 
 SUR PETITION FOR REHEARING
 
 68
 April 14, 1993.
 
 
 69
 Before: SLOVITER, Chief Judge, and BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, LEWIS, and SEITZ, Circuit Judges.
 
 
 70
 The petition for rehearing filed by the appellee in the above captioned matter having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the court in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.
 
 
 
 [1]
 We have jurisdiction pursuant to 28 U.S.C. § 1291. The district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. § 1367. The verdict and consequently the judgment entered thereon were not the same with respect to damages against both appellants, but we need not break down the allocation of damages in this opinion
 
 
 [2]
 In his district court complaint, Griffiths suggested that CIGNA discriminated against him on the basis of race when it did not promote him as "the promotion went to a less senior white employee." But the EEOC charge was not predicated on racial discrimination
 
 
 [3]
 While we only are concerned with these two claims, Griffiths' complaint was much broader and contained ten counts: Count I: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (race and national origin discrimination); Count II: Title VII, 42 U.S.C. § 2000e-3(a) (retaliation); Count III: PHRA, Pa.Stat.Ann. tit. 43, § 951 et seq. (1991) (race and national origin discrimination); Count IV: PHRA, Pa.Stat.Ann. tit. 43, § 955(d) (Supp.1992) (retaliation); Count V: The Civil Rights Act of 1866, 42 U.S.C. § 1981 (race and national origin discrimination); Count VI: malicious prosecution; Count VII: false arrest and imprisonment; Count VIII: defamation; Count IX: specific intent to harm; Count X: intentional infliction of emotional distress. Prior to trial Griffiths withdrew his claims for discrimination (Counts I, III and V), and at the trial the district court directed a verdict in favor of the appellants on the claims of false arrest and imprisonment (Count VII), specific intent to harm (Count IX), and intentional infliction of emotional distress (Count X). Thus, only the claims of defamation, retaliation, and malicious prosecution went to the jury. The jury found in the appellants' favor on the defamation claim. Griffiths has not cross-appealed from either the directed verdict or the judgment on the defamation claim
 
 
 [4]
 The court instructed the jury:
 If the defendants reasonably believed and in good faith honest [sic] believed upon a reasonable investigation, that the facts provided to the police were correct, they would not be liable for malicious prosecution even if some of those facts later turned out to be incorrect.
 JA 206 (emphasis added).
 The interrogatories and answers on the malicious prosecution were as follows:
 
 
 [2]
 Did the defendants initiate criminal proceedings against the plaintiff to retaliate against him because he had filed a charge of employment discrimination against CIGNA? YES
 
 
 [3]
 Did the defendants have an honest, good-faith belief that the plaintiff probably stole CIGNA computer equipment as of the time defendants provided information to the Philadelphia police? NO
 
 
 [4]
 Did the defendants maliciously institute criminal proceedings against the plaintiff? YES
 
 
 [5]
 Were all of the significant facts that the defendants provided to the Philadelphia police true? YES
 (a) Honestly and in good faith and upon reasonable investigation believed to be true? NO
 
 
 [7]
 Did the defendants fail to provide the Philadelphia Police with all of the significant facts they then knew, or on reasonable investigation should have known, and that the defendants then knew or should have known would be significant to the Philadelphia police in conducting the investigation? YES
 If No. 7 is answered YES, was such significant fact (or facts) omitted
 (a) Intentionally and knowingly? YES
 (b) Recklessly? NO
 (c) Negligently? NO
 
 
 [8]
 At the time that the defendants provided information to the Philadelphia police, would a reasonable person, knowing all of the facts then known by the defendants and all of the facts that, upon a reasonable investigation should have been known to the defendants, honestly and in good faith reasonably believe that the plaintiff probably stole CIGNA computer equipment? NO
 JA 225-26 (emphasis added except for the "and" in question 7).
 
 
 [5]
 Comment g provides, in pertinent part:
 A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable ... even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.
 If however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information. In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.
 Restatement (Second) of Torts § 653, comment g (emphasis added).
 
 
 [6]
 The appellants also contend that the district court improperly submitted to the jury the issue of whether there was probable cause. In view of our result, we do not consider this point
 
 
 [7]
 With respect to the retaliatory discharge claim, the court instructed the jury:
 If an employee is fired, that is, discharged or terminated by the employer because the employee had filed a charge of employment discrimination, both federal and state law provide that the employee may sue the employer in court for all damages that the employee suffers as a result of the discharge.
 If, however, he was fired for or discharged or terminated for totally different reasons and in no way to retaliate against him because he had filed charges, then the employer would not be liable.
 Thus, in this case if a motivating factor, that is, if one of the reasons for terminating Jackey Griffiths as an employee was to get back at him or in response or return for his having filed a charge of employment discrimination against CIGNA, CIGNA will be liable for such damages as resulted from the termination of his employment.
 On the other hand, if the fact that Jackey Griffiths had filed a charge of employment discrimination against CIGNA which was then known to CIGNA, played no part in the decision of CIGNA to terminate his employment, regardless of whether you think he was otherwise unfairly treated, he would have no cause of action under the evidence presented in this case.
 If he would not have been discharged but for the fact that he had filed the employment discrimination charges against CIGNA, then retaliation would be a motivating factor.
 If he would have been fired in any event or terminated, and the fact that he had filed an employment discrimination charge played no part in bringing about his discharge, CIGNA would not be liable for a retaliatory discharge.
 Defendants have provided a non-discriminatory valid explanation but plaintiff claims that he has established by a preponderance of the evidence that the explanations are a pretext or a sham and that in actuality, at least one of the motivating factors was retaliation against him, even though there may have been other valid reasons.
 JA 197-200 (emphasis added).
 
 
 [8]
 The appellants objected to the district court's charge on malicious prosecution immediately after it was given, but they did not object to the retaliatory discharge instruction at that time. Rather, they relied on their objection at the charging conference. It would have been better for the appellants to have renewed their objection after the charge was given. However, because the district court acknowledged during oral argument on the appellants post-trial motions that the "contention about the, but for charge, I think that was reasonably well preserved" (Transcript of Oral Argument, May 13, 1992, p. 22), we will consider the appellants' exception to the retaliatory discharge instruction on the merits
 
 
 [9]
 In charging the jury, the court did not distinguish between the federal and state statutes
 
 
 [10]
 PHRA Pretext cases are considered under the same analysis as cases under Title VII. See Allegheny Housing Rehabilitation Corp. v. Human Relations Comm'n, 516 Pa. 124, 532 A.2d 315, 318-19 (1987)
 
 
 [11]
 Following the enactment of the Civil Rights Act of 1991, Title VII provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C.A. § 2000e-2(m), as added by the Civil Rights Act of 1991, section 107(a). The 1991 Act partially overruled Price Waterhouse by providing that even if an employer demonstrates that it would have made the same decision absent a discriminatory motive, the plaintiff continues to be eligible for declaratory and injunctive relief and for attorney's fees and costs. 42 U.S.C.A. § 2000e-5(g)(2)(B), as amended by the Civil Rights Act of 1991, section 107(b). See also Robinson v. Southeastern Pennsylvania Trans. Auth., 982 F.2d 892, 899 n. 8 (3d Cir.1993). As the parties have not argued that this new provision applies retroactively in this case, we will analyze this case under the rules established in Price Waterhouse without regard for the 1991 Act
 
 
 [12]
 If a plaintiff in a pretext case relies on direct evidence of discrimination, the McDonnell Douglas/ Burdine shifting burdens analysis is inapplicable. See Trans World Airlines, Inc. v. Thurston, 469 U.S. at 121, 105 S.Ct. at 621-22; see also Billet v. CIGNA Corp., 940 F.2d at 816. But except in cases concerning the legitimacy of employment practices acknowledged to be the basis for the adverse employment decision, when a plaintiff has direct evidence of discrimination, the case is likely to be a mixed motives case for the employer will offer a different but legitimate basis for the adverse employment decision
 
 
 [13]
 Should a plaintiff intending to advance a mixed motives case fail to show discrimination at the outset, the case then falls under the Burdine pretext standard. Price Waterhouse, 490 U.S. at 247 n. 12, 109 S.Ct. at 1789 n. 12
 
 
 [14]
 To our knowledge, no Pennsylvania court has considered whether "a motivating factor" or "a significant factor" level of causation would suffice under the PHRA. However, in Cain v. Hyatt, 734 F.Supp. 671 (E.D.Pa.1990), the court applied the "motivating" factor causation of Price Waterhouse and the reformulated "but for" test of Bellissimo to the PHRA. Id. at 685 ("In this case, because the plaintiff showed that his non-job related handicap was the dispositive, or but-for, cause of his termination, the proof goes far beyond that which is necessary." (citing Bellissimo) (emphasis added)). As the Pennsylvania Supreme Court has "frequently employed federal case law in its construction of the PHRA," Garvey v. Dickinson College, 775 F.Supp. 788, 800 n. 7 (M.D.Pa.1991), we accept the Cain court's application of Price Waterhouse under the PHRA
 
 
 [15]
 It is only fair to acknowledge that the district court may have been misled by the lack of precision in our opinions to which we already have alluded
 
 
 [1]
 "Probable cause has been defined as a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense." Miller v. Pennsylvania R. Co., 371 Pa. 308, 89 A.2d 809, 811-12 (1952) (quoting Altman v. Standard Refrigerator Co., 315 Pa. 465, 173 A. 411, 417 (1934))
 
 
 [2]
 Given that the parties agree that Thomas states the controlling principle, I do not address the question of whether or not Thomas is still a correct expression of Pennsylvania law. See Kelley, 544 A.2d at 941 ("Usually the existence of probable cause is a question of law for the court rather than a jury question, but may be submitted to the jury when facts material to the issue of probable cause are in controversy.")
 
 
 [3]
 It is not clear to me how such an instruction would operate as to this issue if the probable cause determination is made by the court after the fact finder determines the underlying facts