

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-24-1994

# Miller v. Cigna Corporation

Precedential or Non-Precedential:

Docket 93-1773

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Miller v. Cigna Corporation" (1994). *1994 Decisions*. Paper 61.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/61

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NO. 93-1773


WILLIAM J. MILLER,
Appellant

v.

CIGNA CORPORATION;
THE INSURANCE COMPANY OF NORTH AMERICA


On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 92-05751)


Argued March 28, 1994

BEFORE:  STAPLETON, HUTCHINSON and ROTH, <u>Circuit Judges</u>

(Opinion Filed June 28, 1994 )



Stephanie A. Middleton (Argued)
Gregory B. Tobin
One Liberty Place, 52nd Floor
1650 Market Street
P.O. Box 7716
Philadelphia, PA 19101



Attorneys for Appellees
CIGNA Corporation and
Insurance Company of North America




1

Alice W. Ballard (Argued)
Lynn Malmgren
Samuel & Ballard
225 South 15th Street
Suite 1700
Philadelphia, PA 19102

Attorneys for Appellant


OPINION OF THE COURT


STAPLETON, Circuit Judge:


Defendant Insurance Company of North America ["INA"] terminated plaintiff William J. Miller from his job after fifteen years of employment.[1] Miller alleges that he was discriminated against on the basis of his age in violation of the Age Discrimination in Employment Act ["ADEA"], 29 U.S.C. §§ 621-34 (1988).

At trial, the district judge instructed the jury that it could return a verdict for Miller only if he proved that age was "the sole cause" of INA's decision. After the jury returned a verdict in INA's favor, Miller appealed, asserting that the district court improperly charged the jury regarding his burden of proof. We hold that in ADEA cases that do not qualify for a burden shifting charge under Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), district courts should instruct the jury that

---

[1] At oral argument, the parties stipulated that INA was the plaintiff's employer at all times relevant to this appeal. At trial, however, both INA and CIGNA Corp. were defendants.

2

the plaintiff's burden is to prove that age played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process.  Since it is not necessary for the plaintiff to prove that age was the sole cause of the employer's decision, we conclude that Miller is entitled to a new trial.

## I.

Miller was hired in 1975 as an assistant to INA's Chief Financial Officer.  In that position, he directed INA's reinsurance operations at the Newark Reinsurance Company, created a financial processing service center, and directed the production of summary financial documents.  After serving as Vice President and Director of INA's Special Risk Facility, Miller was promoted to Senior Vice President, Field Operations.  He created a new organization, managed a $200 million budget, and supervised over 8,000 employees.  At this point in his career, Miller was compensated at pay grade sixty-one and his superior consistently evaluated his performance as exceeding expectations.

After his promotion to Senior Vice President, Miller was asked to join a special team of other executives called IMPACT.  IMPACT's mission was to identify major strategic issues and market strategies for INA's Property and Casualty Division. Caleb Fowler, Chief Financial Officer of the Property and Casualty Division, and Richard Hoag, Chief of Human Resources, told Miller they would find him a permanent position at the

conclusion of the project. When IMPACT concluded in late 1984, Miller was assigned to a special project on reinsurance collection.

Upon completing the special project on reinsurance collection, Miller was appointed to the position of Senior Vice President of the Underwriting Division. In this position, Miller managed four departments, handled complaints from agents and regulatory agencies, prepared state filings and annual budgets, and managed a $70 million annual budget.

In late 1988, Miller's supervisor, Jack Morrison, advised Miller that he should search for another job, both inside and outside the company, because his position might be eliminated. In March of 1989, Miller's position was eliminated. Miller's superior, Nord Bjorke, sent him to Richard Hoag to receive a special assignment reducing real estate costs in the Property and Casualty Division.

One year later, Hoag informed Miller that, despite his success in reducing real estate costs, his position as "real estate czar" was being terminated. Hoag advised Miller that he could assist Robert O'Neil, head of Real Estate in the Corporate Staff, with special projects. In November of 1990, Miller was informed that this position was being eliminated and that he would be terminated at the end of December. At the time he was terminated, Miller was fifty-eight years old and had been downgraded to pay grade fifty-nine. At no time during 1990 was Miller informed about five vacancies at the company for which he might have applied.

4

The first vacancy was for the position of Vice President, Filing and Regulation.  Defendant announced that Darrell DeMoss, age forty-two, had been selected.  Miller had not known of the position and contends that he was qualified for it because, as Senior Vice President, Finance and Administration, he supervised the Filing and Regulation function.  Defendant asserts that Miller was not considered because the position required legal analysis and Richard Franklin, the hiring manager for this position, decided to hire an attorney.  Miller notes, however, that his name was not included on the list of nonlawyer candidates who were considered but disqualified, and that the previous Vice President, Filing and Regulation, was not a lawyer.

The second vacancy was in the position of General Manager of CIGNA Reinsurance Company, United Kingdom.  Among the desired qualifications were "[w]ork experience with either United Kingdom accounting practices or reinsurance accounting practices and principles . . . ."  App. at 712.  Miller asserts that this position involved the same responsibilities he had when he supervised the Newark Reinsurance Company.  James Godorecci, who was in charge of hiring for the position, acknowledged that he wrote the job qualifications with Michael Durkin, age thirty-five, in mind and that he never considered Miller for the position.  INA contends that Miller lacked the desired academic credentials, work experience and knowledge of United Kingdom accounting practices.

The third vacancy was for the position of Senior Vice President, Finance Systems and Administration, in the Claims

5

Department. Qualifications desired for the position included: broad knowledge and experience in the Property and Casualty business; knowledge of financial measures and objectives; credibility and the ability to work with other managers; skill in influencing managers and implementing strategy; and effective verbal and written skills. Miller contends he satisfied these requirements because of his management experience. James Engle, the hiring manager for this position, testified Miller was not qualified because he did not have a strong math and statistical background, and was not familiar with loss control and statistical monitors. The company asserts that Victor DiFelice, age thirty-eight, was better qualified for the job.

The fourth vacancy, for the position of Head of Strategy Implementation, was filled by Ronald Peters, age forty-nine. The company conceded that Miller was qualified for the job, but maintained that Peters was better qualified.

The fifth vacancy was for the position of Vice President, Property and Casualty Marketing. Hiring manager Thomas Cobb appointed Cynthia Cole-Dougherty, age thirty-eight. Job qualifications included an ability to conduct market studies, market research, competitive analyses and segmentation studies. INA asserts that, although Cynthia Cole-Dougherty did not have insurance experience, one of the primary considerations in the hiring decision was a desire to hire from outside both the company and the industry.

During trial, the district judge asked counsel if Miller's was a "pretext" or "mixed motives" case. This inquiry

6

made reference to the distinction between employment discrimination cases in which the plaintiff seeks to carry his or her burden by showing that the employer's tendered reason for the challenged action is a pretext for discrimination[2] and cases that qualify for a mixed motives, burden shifting instruction under Price Waterhouse v. Hopkins, 490 U.S. 228.  Miller's counsel advised the district court that this was a "pretext" case. The district judge then "distribute[d] to counsel the questions [to be used] to submit the case to the jury. . . ."  App. at 610. After reviewing those questions, Miller's counsel stated that she had an objection.  Counsel cited Hazen Paper Co. v. Biggins, 113 S. Ct. 1701 (1993), and asserted that plaintiff's burden of proof under that case was to establish that age was "a determining factor," i.e., that it "made a difference" in the employer's decision.  App. at 612.

Notwithstanding this objection, the district judge instructed the jury as follows:

> To recover under the pretext theory which the plaintiff asserts in this case, the plaintiff must establish by a preponderance of the evidence that his age was the sole cause of defendants' failure to hire him into vacancies that became available and to terminate his position as a real estate czar in the last of those listings that I've put on the page that you have; that he was qualified and rejected for the positions in question solely because of his age.

* * *

---

[2] See, e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981); St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742 (1993).

7

If the defendants articulate a legitimate non-discriminatory reason for his rejection, the plaintiff at all times retains the ultimate burden of persuading you that the defendant intentionally discriminated against him because of his age.

\* \* \*

The plaintiff under the law must prove that the discriminatory motive was the <u>sole cause</u> of the employment action.

In order to prove pretext, the plaintiff must show that the defendant's reasons were false and that discrimination was the real reason, however, if you disbelieve the reasons put forth by the defendants to justify their decision, you may but are not required to find intentional discrimination.

\* \* \*

The plaintiff doesn't have to prove that the employer hated him . . . . He has to prove that plaintiff's <u>age was the sole determinative factor</u> in the particular employment decision.

App. at 673-77 (emphasis added). At the conclusion of the charge, Miller's counsel renewed her "objection to . . . the verdict sheet. . . [and stated that] the question before them is whether age was <u>a determinative factor</u> according to <u>Biggins</u>." App. at 683 (emphasis added). The district court declined to alter the charge.

During its deliberations, the jury sent the following message to the district judge:

The jury requests clarification on the meaning of defendants' employment decisions in question # 2.

Is the question which we are addressing (regarding discrimination based solely on the

8

plaintiff's age) focused on: a) Mr. Miller not being actively considered -- on the candidate slate, or b) Mr. Miller not being selected as the person to get the job, for each of the jobs a through e?

App. at 691. In response the district judge stated:

> [Y]ou must decide whether Mr. Miller's not being selected to get the job of Vice President of Filing and Regulation to take "a" and that job going to another person was a decision made by the defendants as a pretext for discrimination <u>based solely on Mr. Miller's age.</u>
>
> "b" in the question sheet the question you have to decide is whether to give that job to the person who received it for the CIGNA (UK) position was made as a pretext for discrimination against Mr. Miller <u>based solely on Mr. Miller's age</u> and so on with regard to each of the other decisions in 2 a. considered separately[.]

App. at 691-92 (emphasis added). After two days of deliberations, the jury returned a verdict in favor of INA.

## II.

We conduct plenary review when an appellant contends that the instructions to the jury, read as a whole, do not state the correct legal standard. <u>Griffiths v. CIGNA Corp.</u>, 988 F.2d 457, 462 (3d Cir.), <u>cert. denied</u>, 114 S. Ct. 186 (1993) (citing <u>Savarese v. Agriss</u>, 883 F.2d 1194, 1202 (3d Cir. 1989)). "[W]e will reverse if the instructions were capable of confusing and thereby misleading the jury." <u>Id.</u> (citing <u>Limbach Co. v. Sheet</u>

9

<u>Metal Workers Int'l Ass'n</u>, 949 F.2d 1241, 1259 n.15 (3d Cir. 1991) (in banc)).[3]

## III.

Like Title VII which prohibits an employer from taking adverse employment actions against an employee "because of such individual's race, color, religion, sex or national origin," 42 U.S.C. § 2000 e-2(a)(1), the ADEA prohibits an employer from taking adverse employment actions against an employee "because of such individual's age." 29 U.S.C. § 623(a)(1). Not surprisingly, the ADEA jurisprudence concerning this prohibition has followed the Title VII jurisprudence interpreting the analogous prohibition. <u>Trans World Airlines, Inc. v. Thurston</u>, 469 U.S. 111, 121 (1985). A district judge in a case under either statute must, of course, instruct the jury in a manner consistent with Congress' mandate that the adverse employment action must have been taken "because of" the prohibited consideration.

The nature of the causal connection mandated by the use of the phrase "because of" in Title VII was a focus of the Supreme Court's opinions in <u>Price Waterhouse v. Hopkins</u>, 490 U.S.

---

[3]Defendant argues that Miller failed to preserve his objection to the jury charge. We disagree. Miller's counsel objected, both before and after the district court charged the jury, that plaintiff's burden on the issue of causation was to show that age was a determinative factor, not the sole cause of the employment decision. <u>See</u> Fed. R. Civ. P. 51; <u>Dunn v. Hovic</u>, 1 F.3d 1371, 1379 (3d Cir. 1993) (in banc) (to preserve an objection to a jury charge, appellant must provide the trial judge with an opportunity to correct the erroneous charge).

228. The members of the Court differed as to whether "because of" meant that the forbidden consideration must be a "but-for" cause (i.e., one without which the adverse employment action would not have been taken) or only that the impermissible consideration must have "played a motivating part" in the decision to take that action.  See id. at 244.  All members of the Court agreed, however, that "because of" did not mean "solely because of."  See, e.g., id. at 241, 284.

Justice Brennan, writing for himself and Justices Marshall, Blackmun and Stevens, took the position that "because of" required only a finding that gender or some other prohibited consideration played a part in the decision to take the challenged action.  He explained their position in part as follows:

> We take these words to mean that gender must be irrelevant to employment decisions.  To construe the words "because of" as colloquial shorthand for "but-for causation," as does Price Waterhouse, is to misunderstand them.
>
> * * *
>
> The critical inquiry . . . is whether gender was a factor in the employment decision at the moment it was made.  Moreover, since we know that the words "because of" do not mean "solely because of,"[7] we also know that Title VII meant to condemn even those decisions based on a mixture of legitimate and illegitimate considerations.  When, therefore, an employer considers both gender and legitimate factors at the time of making a decision, that decision was "because of" sex and the other, legitimate considerations -- even if we may say later, in the context of litigation, that the decision would have been the same if gender had not been taken into account.

11

$^7$Congress specifically rejected an
amendment that would have placed
the word "solely" in front of the
words "because of."  110 Cong.Rec.
2728, 13837 (1964).

Price Waterhouse, 490 U.S. at 240, 241 (emphasis added).

Justice Kennedy, writing in dissent for himself, the
Chief Justice, and Justice Scalia, concluded that "because of"
required "but-for" cause.  In doing so, he likewise rejected the
suggestion that it was intended to mean "solely because of":

By any normal understanding, the phrase
"because of" conveys the idea that the motive
in question made a difference to the outcome.
We use the words this way in everyday speech.
And assuming, as the plurality does, that we
ought to consider the interpretive memorandum
prepared by the statute's drafters, we find
that this is what the words meant to them as
well.  "To discriminate is to make a
distinction, to make a difference in
treatment or favor."  110 Cong.Rec. 7213
(1964).  Congress could not have chosen a
clearer way to indicate that proof of
liability under Title VII requires a showing
that race, color, religion, sex, or national
origin caused the decision at issue.

Our decisions confirm that Title VII is
not concerned with the mere presence of
impermissible motives; it is directed to
employment decisions that result from those
motives.  The verbal formulae we have used in
our precedents are synonymous with but-for
causation.

* * *

We are told . . . that but-for cause is
not required, since the words "because of" do
not mean "solely because of."  Ante, at 241.
No one contends, however, that sex must be
the sole cause of a decision before there is
a Title VII violation.  This is a separate

12

question from whether consideration of sex must be <u>a</u> cause of the decision.  Under the accepted approach to causation that I have discussed, sex is a cause for the employment decision whenever, either by itself or in combination with other factors, it made a difference to the decision.  <u>Discrimination need not be the sole cause in order for liability to arise, but merely a necessary element of the set of factors that caused the decision, i.e., a but-for cause.</u>

<u>Price Waterhouse</u>, 490 U.S. at 281-82, 284 (emphasis added).

Justice O'Connor, while concurring in the result reached in Justice Brennan's plurality opinion, disagreed with the plurality's reading of "because of" and agreed with that of the dissent:

The legislative history of Title VII bears out what its plain language suggests:  a substantive violation of the statute only occurs when consideration of an illegitimate criterion is the "but-for" cause of an adverse employment action.  The legislative history makes it clear that Congress was attempting to eradicate discriminatory actions in the employment setting, not mere discriminatory thoughts. . . .  Senator Case, whose views the plurality finds so persuasive elsewhere, responded:

"The man must do or fail to do something in regard to employment.  There must be some specific external act, more than a mental act.  Only if he does the act because of the grounds stated in the bill would there by any legal consequences."  <u>Ibid</u>.

Thus, I disagree with the plurality's dictum that the words "because of" do not mean "but-for" causation; manifestly they do."

<u>Price Waterhouse</u>, 490 U.S. at 262-63.  In the course of her opinion, Justice O'Connor likened the relevant principles to

13

those involved in <u>Village of Arlington Heights v. Metropolitan Housing Development Corp.</u>, 429 U.S. 252 (1977), where the Court held that "the plaintiff was not required to prove that the challenged action rested <u>solely</u> on racially discriminatory purposes."  490 U.S. at 268 (emphasis supplied).

Finally, Justice White, who also concurred in the judgment of the Court, looked to <u>Mt. Healthy City School District Board of Education v. Doyle</u>, 429 U.S. 274 (1977), for guidance in interpreting "because of."  In the context of a public employer's decision not to rehire an employee in part because of his exercise of First Amendment rights, the Court had there rejected a rule of causation that focused "solely on whether protected conduct played a part, 'substantial' or otherwise, in a decision not to rehire."  <u>Price Waterhouse</u>, 490 U.S. at 259.  Under the <u>Mt. Healthy</u> approach, the plaintiff was required to prove only that "the unlawful motive was a <u>substantial</u> factor in the adverse employment action," but there could be no liability if the defendant showed that it "would have reached the same decision . . . even in the absence of the protected conduct."  <u>Id.</u>  A necessary corollary to this approach, according to Justice White, was that a plaintiff does not have "to prove that the illegitimate factor was the only, principal, or true reason for petitioner's action."  <u>Id.</u>

We find it clear from the opinions in <u>Price Waterhouse</u>, and from the legislative history they cite, that Congress, by using the phrase "because of," did not mean "solely because of." Even if we did not have this guidance, however, we would be

reluctant to attribute to Congress an intention that an employer should be liable if a discharge decision is based solely on an employee's age and not liable if the discharge decision is based primarily on the employee's age but also on the fact that the employee's supervisor did not like his personality, hair color, or some other personal trait or conduct.

Having concluded that "because of" does not mean "solely because of," we now look to the governing precedents to determine the proper jury instruction in an employment discrimination case that does not qualify for a mixed motives, burden shifting charge under Price Waterhouse.

**IV.**

The Justices concurring in the judgment in Price Waterhouse declined to apply to the situation before them the familiar rules for allocating the burdens of production and persuasion found in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).[4]  They viewed those cases as "pretext" cases

---

[4]As summarized in Burdine, those rules are:

> [First] the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination.  Second, if the plaintiff succeeds in proving the prima facie case, the burden [of production] shifts to the defendant to articulate some legitimate nondiscriminatory reason for the employee's rejection.  Third, should the defendant carry this burden, the plaintiff must then have the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant

15

and the case before them as a "mixed motives" case.  The Court held that, in cases where the plaintiff offers "direct evidence" of unlawful discrimination and the evidence as a whole permits a conclusion that both permissible and impermissible considerations played a role in the employer's decision, the plaintiff need only show that the unlawful motive was a substantial motivating factor in that decision.  If the finder of fact concludes that the plaintiff has carried this burden, the burden of persuasion shifts to the defendant to prove that the unlawful motive was not a but-for cause, i.e., that the same action would have been taken, because of legitimate considerations, in the absence of the unlawful motive.

The members of the Court concurring in the judgment in Price Waterhouse reached this result by different routes. Justices Brennan, Marshall, Blackmun and Stevens read the statute as imposing liability in any situation where the unlawful motive was a "motivating" factor, but recognized an "affirmative defense" where the employer shows that the same actions would have been taken in the absence of the unlawful motive.  Price Waterhouse, 490 U.S. at 244, 250.  Justice O'Connor agreed with the three dissenters that the statute required but-for cause as a predicate to liability, but favored a burden shifting rule for cases in which the plaintiff "show[s] by direct evidence that an

---

were not its true reasons, but were a pretext for discrimination.

Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (citations omitted).

16

illegitimate criterion was a substantial factor in the decision."
Id. at 276.  In such cases, the burden shifts "to the employer to
justify its decision," -- "to show that the decision would have
been the same absent discrimination."  Id.  "[W]here a plaintiff
has made this type of strong showing of illicit motivation, the
fact finder is entitled to presume that the employer's
discriminatory animus made a difference in the outcome, absent
proof to the contrary from the employer."  Id.  Justice White
found it unnecessary "to get into a semantic discussion on
whether Mt. Healthy . . . creates an affirmative defense."  He
agreed with Justice O'Connor, however, that the plaintiff in
Price Waterhouse had made the requisite showing that sex was a
substantial factor in the employer's decision and that the
"burden of persuasion then should have shifted to Price
Waterhouse to prove" the same decision would have been made
absent the unlawful motive.

For present purposes, there are two important things to
note about the several opinions in Price Waterhouse.  First, a
majority of the members of the Court did not endorse the
plurality's view that Title VII imposed liability whenever a
prohibited factor played a motivating role in the challenged
decision.  Justices O'Connor and White and the three dissenters
rejected, in the words of Justice White, "a rule of causation
that focused solely on whether protected conduct played a part,
substantial or otherwise, in a decision."  490 U.S. at 259.
Second, while the holding of the Court fashioned a special rule
reducing the plaintiff's burden of persuasion in a defined

category of Title VII individual discrimination cases, a majority of the Court endorsed views of Title VII that would leave plaintiffs in other individual discrimination cases with the burden of showing but-for cause.

All members of the Court now seem to agree that a showing of but-for causation by the plaintiff is required in ADEA cases that do not call for special treatment under Price Waterhouse.[5]  In Hazen Paper Co., 113 S. Ct. 1701, the plaintiff, like the plaintiff here, claimed that he had been discharged because of his age in violation of the ADEA.  The Supreme Court was called upon to address the relationship between the standard of ordinary liability under the ADEA and the standard of liability for liquidated damages under the provision of that Act authorizing such damages for "willful" violations.  With respect to the former, Justice O'Connor, writing for a unanimous Court, reviewed the case law applicable to disparate treatment (i.e., individual discrimination) cases and concluded as follows:

> Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome.

Id. at 1706.

---

[5]Section 107 of the 1991 Civil Rights Act, codified at 42 U.S.C. § 2000e-2(m), provides that "an unlawful employment practice is established when the complaining party demonstrates that [a prohibited consideration] was a motivating factor for any employment practice, even though other factors also motivated the practice."  Miller does not contend that this provision is applicable to ADEA cases.  We have today held in Hook v. Ernst & Young, ____ F.3d ____ (3d Cir. 1994) that section 107 does not apply to any case in which the alleged conduct giving rise to the claim occurred before the passage of the 1991 Act.

18

With respect to the standard of liability for liquidated damages, the Court held:

> We therefore reaffirm that the Thurston definition of "willful" -- that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute -- applies to all disparate treatment cases under the ADEA. Once a "willful" violation has been shown, the employee need not additionally . . . prove that age was the predominant rather than a determinative factor in the employment decision.

Id. at 1710.

We find support in Hazen Paper for our earlier conclusion that "because of" does not mean "solely because of." If an ADEA plaintiff need not show that age was "the predominant factor" in order to establish liability for liquidated damages, surely such a plaintiff does not have to show that age was the sole cause of the challenged decision in order to establish a right to normal forms of relief. We also believe Hazen Paper provides an authoritative answer to our second inquiry. A plaintiff in an ADEA case who does not qualify for a burden shifting instruction under Price Waterhouse has the burden of persuading the trier of fact by a preponderance of the evidence that age "actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome" of that process. Id. at 1706.

## V.

Contrary to INA's insistence, the foregoing conclusions are not inconsistent with our holding in Griffiths v. CIGNA

19

Corp., 988 F.2d 457. Griffiths was a Title VII case in which the plaintiff, a Jamaican immigrant, had been denied a promotion and had filed a complaint with the Equal Employment Opportunity Commission asserting that CIGNA's decision was based on his national origin. In the six months prior to the filing of this complaint, CIGNA had experienced a series of thefts and had conducted an investigation. The report resulting from this investigation, issued shortly after Griffiths' EEOC complaint, implicated Griffith in the thefts. He was terminated for the stated reason that he had failed to cooperate with the investigation. Griffiths filed suit alleging that he was discharged in retaliation for his EEOC complaint.

Following a trial at which Griffiths introduced evidence tending to show that CIGNA falsely had accused him of the thefts and that the stated reason for his discharge was a pretext to cover a retaliatory motive, the trial judge charged the jury that CIGNA would be liable "if retaliation was 'a motivating factor' or 'one of the reasons' for Griffiths' discharge." 988 F.2d at 468. On appeal, we held that it was error for the district court to require Griffiths to show that the unlawful motivation played only a role in the challenged decision.

Our opinion in Griffiths recognized that, under Price Waterhouse, the correct wording of a causation instruction to a jury differs depending on whether the case before the court is a "mixed motives" or a "pretext" case. Only in a "mixed motives" case is the plaintiff entitled to an instruction that he or she

20

need show only that the forbidden motive played a role, i.e., was "a motivating factor." Even in such cases, we noted that such an instruction must be followed by an explanation that the defendant may escape liability by showing that the challenged action would have been taken in the absence of the forbidden motive.

We first concluded that Griffiths had "failed to submit any evidence that [could] fairly be said to 'directly reflect' the alleged retaliatory motive for his termination." Id. at 470. Accordingly, he was not entitled to a burden shifting instruction under Price Waterhouse. We next concluded that all Title VII individual discrimination cases which do not qualify for a Price Waterhouse instruction are governed by "the Burdine pretext standard." Id. at 470 n.13. Our holding was as follows:

> As this case properly is characterized as a pretext case, the court should not have charged the jury that retaliation could be only "a motivating factor" or "one of the reasons" for Griffiths' discharge.

Id. at 472. We reaffirm this holding today.

In the course of our opinion, we went on to discuss "the Burdine pretext standard." We found "some inconsistency within this circuit" with respect to the language used to describe the required causation in a pretext case. We noted that in Chipollini v. Spencer Gifts, Inc., 814 F.2d 893 (3d Cir.), cert. dismissed, 483 U.S. 1052 (1987), an in banc decision of this court, we held that an ADEA plaintiff "need not prove that age was the employer's sole or exclusive consideration, but must prove that age made a difference in the decision." Id. at 897.

21

We further noted that a long line of panel decisions of this court followed this "but for" approach and required a showing that the prohibited motive was "a determinative" factor. See, e.g., Gray v. York Newspapers, Inc., 957 F.2d 1070, 1079 (3d Cir. 1992); Billett v. CIGNA Corp., 940 F.2d 812, 816 (3d Cir. 1991); Bruno v. W.B. Saunders Co., 882 F.2d 760, 764 (3d Cir. 1989), cert. denied sub nom. CBS, Inc. v. Bruno, 493 U.S. 1062 (1990); Roebuck v. Drexel Univ., 852 F.2d 715, 726 (3d. Cir. 1988); Blum v. Witco Chemical Corp., 829 F.2d 367, 373 (3d Cir. 1987); and Lewis v. University of Pittsburgh, 725 F.2d 910 (3d Cir. 1983), cert. denied, 469 U.S. 892 (1984). On the other hand, we noted that our decision in Bellissimo v. Westinghouse Electric Corp., 764 F.2d at 175 (3d Cir. 1985), cert. denied, 475 U.S. 1035 (1986), spoke of the concept of but-for cause as being inconsistent with a charge using the phrase "the determinative factor." Id. at 176, n. 1 (emphasis in original). Even Bellissimo, however, was consistent with the proposition that the plaintiff in a pretext case need not prove that the prohibited motive was the sole cause of for the adverse employment action. This was apparent from the following segment of that case which we quoted in Griffiths:

> Interpreting Title VII to require proof of "the determinative factor" is inconsistent with the "but-for" causation test, insofar as plaintiff would be required to show that the discriminatory motive was the sole reason for

22

the action taken. More than one "but for" cause can contribute to an employment decision, and if any one of those determinative factors is discriminatory, Title VII has been violated. See Lewis v. University of Pittsburgh, 725 F.2d at 917 n. 8.

988 F.2d at 471 (emphasis in original).

Immediately following this review of our case law, our opinion in Griffiths includes the following, admittedly cryptic, observation upon which the district court here relied in giving its "sole cause" instruction:

> [W]hile we recognize that in our pretext cases we have stated in passing, without focusing on the matter, that the discriminatory motive need not be the sole factor causing the employment decision . . . it is clear that in pretext cases the claim is that the discriminatory motive was the sole cause of the employment action and therefore it is inappropriate to state that the plaintiff only need show that the discrimination played "a motivating" or "a substantial" role.

988 F.2d at 472 (emphasis in original).

For several reasons, we do not understand this sentence in Griffiths to mandate a charge in this case requiring the plaintiff to show that the impermissible factor was the sole cause of the adverse employment action. First, while the term "sole cause" is used, the purpose of this sentence in the opinion is to make the point that our prior cases refusing to require a showing that the discriminatory motive was the sole cause are not

23

inconsistent with our holding that "it is inappropriate to state [in a pretext case] that the plaintiff only need show that the discrimination played 'a motivating' or 'a substantial' role."

Second, to read this sentence as the district court here did would make the panel's decision in Griffiths inconsistent with Hazen Paper as well as with our in banc decision in Chipollini. A panel of this court is not free to ignore an in banc decision of this court. See Siegel v. Alpha Wire Corp., 894 F.2d 50, 53 n.2 (3d Cir.), cert. denied, 496 U.S. 906 (1990) ("The defendants argue that we should overrule Chipollini. Of course we do not have the power to do so –– a panel of this court may not overrule a decision of another panel. In addition, Chipollini was decided by this court sitting in banc, which makes doubly frivolous this invitation to overrule it."); Halderman v. Pennhurst State Sch. & Hosp., 707 F.2d 702, 720 (3d Cir. 1983) (Sloviter, J., dissenting) ("Even if the Master had relied upon the presumption in favor of deinstitutionalization, it was one mandated by in banc decisions of this court, which a panel is not free to disregard."); cf. Third Circuit I.O.P. 9.1 (only the court in banc may overrule the published decision of a previous panel). Moreover, a decision of this court that conflicts with a subsequent decision of the Supreme Court does not remain binding precedent in this court. See, e.g., Nationwide Ins. Co. v. Patterson, 953 F.2d 44, 46 (3d Cir. 1991) ("Ordinarily, a panel of this court is bound to follow the holdings of published opinions of prior panels of this court unless overruled by the court in banc or the holding is

24

undermined by a subsequent Supreme Court case."); Frangos v. Doering Equip. Corp., 860 F.2d 70, 72 (3d Cir. 1988) ("Although a cogent argument could have previously been waged based on past precedent within this circuit, the Supreme Court has recently rendered a decision making the Appellee's position untenable.").

Finally, it is no longer necessarily true, even if one thought it to be so at the time of Griffiths, that the trier of fact in a pretext case is limited to a choice between findings that the alleged discriminatory motive or the employer's nondiscriminatory explanation was the sole cause of the employment action. At the time we decided Griffiths, it was permissible to view all pretext cases as presenting only two possibilities: the fact finder could conclude either that the plaintiff had succeeded in proving that the employer's explanation was a pretext for discrimination, or that the plaintiff had failed to so prove. Under this view, if the plaintiff proved the employer's proffered reason was pretextual, the trier of fact presumed, as a matter of law, that the impermissible cause alleged by plaintiff was the sole cause of the employer's decision.

The Supreme Court recently has instructed that this bipolar view of pretext cases is inaccurate. A finding that the employer's nondiscriminatory explanation is a pretext permits, but does not require, the trier of fact to conclude that the employer discriminated against the plaintiff based on the ground alleged. St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742 (1993).

25

In St. Mary's, the plaintiff, an African-American, had been demoted and ultimately discharged by his employer. He brought suit under Title VII, asserting that the employer's actions were the result of racial animus. The employer insisted it took these actions because plaintiff threatened his superior and permitted his subordinates to break institutional rules. The district court, as the trier of fact, found that the threatening conduct and rules violations had occurred, but concluded that neither these events nor the plaintiff's race were the real reason for plaintiff's demotion and discharge. Rather, the district court concluded that "although [the plaintiff had] proven the existence of a crusade to terminate him, he [had] not proven that the crusade was racially rather than personally motivated." Hicks v. St. Mary's Honor Ctr., 756 F. Supp. 1244, 1252 (E.D. Mo. 1991).

The court of appeals, viewing pretext cases as bipolar, ruled that, once plaintiff proved the employer's proffered reasons were pretextual, he was entitled to judgment as a matter of law. Hicks v. St. Mary's Honor Ctr., 970 F.2d 487, 492 (8th Cir. 1992). The Supreme Court reversed, concluding that the trier of fact's rejection of the employer's proffered reason for its action did not compel the conclusion that race was the sole cause of the employment decision. Rather, the record evidence supported three possible causes: race, threats and violations of the employer's rules, and personal animosity. The Supreme Court ruled that the trier of fact was entitled to draw from the record evidence whatever inferences that evidence would support. Since

26

the district court concluded that the explanation advanced by the employer was a pretext, it could have further inferred that there was an impermissible motive to hide. It was not required to do so, however. If the district court inferred that personal animosity was the cause of the demotion and discharage, that, too, was permissible.

We think it clear from the Supreme Court's opinion in St. Mary's that the trier of fact in a pretext case, where the record will support it, may choose not to accept either party's litigating position as reflecting the whole truth. This may, as in St. Mary's, take the form of a conclusion that the adverse action was taken for a reason other than the reasons urged by the parties. It may also take the form of a conclusion that the alleged discrimination and the employer's nondiscriminatory explanation both played a role in the employer's decision. If the plaintiff, for example, argues that he or she was discharged because of age and the employer insists that it was because of the plaintiff's record of absenteeism, the trier of fact may conclude that the plaintiff's absenteeism record played a part, but that the plaintiff would not have been fired if he or she were twenty years younger.

In some cases, the nondiscriminatory reason advanced by the employer may involve such turpitude that the only rational choices for the trier of fact are the plaintiff's explanation or the defendant's. If the plaintiff alleges age discrimination and the employer asserts that the plaintiff embezzled $100,000, for example, it would clearly not be reversible error to give an

27

instruction giving the jury the choice between age as the sole cause and embezzlement as the sole cause. A rational trier of fact could not believe that the plaintiff embezzled $100,000 and at the same time conclude that the plaintiff would not have been discharged but for his or her age. In other cases, however, where the record will support an inference that both a legitimate and an illegitimate reason played a role in the employer's decision, the charge to the jury must provide for the possibility that it will find the employer's decision to be the product of more than one consideration. In those cases, the court must charge, in accordance with Hazen Paper, that the plaintiff's burden is to show that the prohibited consideration played a role in the decisionmaking process and that it was a determinative factor in the outcome of that process.[6]

In this case, Miller alleged that, because of his age, he was not selected for various open high level management positions for which he was qualified, and that thereafter he was terminated. For each of the open positions, Miller's employer asserted either that Miller was not qualified or was less

---

[6]We are here, of course, describing cases that involve mixed motives decisionmaking. It is important to understand, however, that these cases do not fall within the legal category of "mixed motives" cases reserved for special treatment under Price Waterhouse. As we explain more fully in Griffiths and Hook v. Ernst & Young, ___F.3d ___ (3d Cir., May, 1994), "mixed motives" cases in Price Waterhouse terms are cases not only where the record would support a conclusion that both legitimate and illegitimate factors played a role in the employer's decision, but where the plaintiff's evidence of discrimination is sufficiently strong to shift the burden of proof to the employer on the issue of whether the same decision would have been made in the absence of the discriminatory animus.

28

qualified than the person hired.  Based on the evidence presented at trial, the jury could well have concluded that the employer took both qualifications and age into account.  It might have found, for example, that Miller was qualified for one or more of the open positions, but that his credentials did not sufficiently distinguish him from the competing managers to overcome the employer's bias favoring younger executives.  Even though age was not the sole cause of the decision and Miller would have gotten one of the positions if he had been better qualified, Miller should have prevailed if he would not have been passed over but for his age.  The district court's "sole cause" charge did not permit the jury to find in Miller's favor on this basis.  It follows that Miller is entitled to a new trial.

## VI.

We hold that in an ADEA case which does not qualify for a burden shifting instruction under <u>Price Waterhouse</u>, a district court should instruct the jury that the plaintiff must prove by a preponderance of the evidence that age played a role in the employer's decisionmaking process and that it was a determinative factor in the outcome of that process.[7]  Since the district court instructed that age must be shown to be the sole cause of the

---

[7]In the course of this opinion, we have relied on Title VII cases because the development of the relevant case law under the two statutes prior to the Civil Rights Act Amendments of 1991 followed parallel courses.  It should be noted, however, that the 1991 Act amended Title VII but did not amend the ADEA.

employer's decision and since the record would support a conclusion that, while other factors played a role, age was a determinative factor, we will reverse and remand for a new trial.