Carmela F. **DURKO**, Plaintiff,

v.

**OI–NEG TV PRODUCTS, INC.,**
**et al., Defendants.**

**Civ. A. No. 4:CV–93–1284.**

United States District Court,
M.D. Pennsylvania.

Sept. 16, 1994.

See also, 870 F.Supp. 1278.

David P. Tomaszewski, Kimberly D. Borland, Wilkes Barre, PA, for plaintiff.

Arthur L. Piccone, Wilkes Barre, PA, for defendants.

## MEMORANDUM

VANASKIE, District Judge.

On August 17, 1993, plaintiff commenced this employment discrimination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. S.A. §§ 951, *et seq.* Named as defendants are plaintiff's employer, OI–NEG TV Products, Inc. (hereinafter referred to as the "Employer"), and her collective bargaining representative, Glass, Molders, Pottery, Plastics & Allied Workers International Union AFL–CIO, CLC No. 243 (hereinafter referred to as the "Union").

On July 12, 1994, the Union moved for summary judgment, contending that plaintiff is unable to present facts sufficient to warrant submission of her claims to a trier-of-fact. For the reasons set forth below, the Union's Motion will be denied.

## BACKGROUND [1]

Pursuant to the Collective Bargaining Agreement between the Employer and the Union, job vacancies in the Employer's plant are filled generally on a seniority basis, unless an employee has "recall" rights to the position. If an employee has recall rights to a job that becomes available, he or she has the right to be placed in that position without the job being posted for bid on a seniority basis.

Prior to the Spring of 1991, plaintiff worked in the Employer's Selecting Department. In May of 1991, plaintiff bid on a position as Assistant Furnace Operator on the "D Shift," which worked on a rotation schedule as opposed to a steady day shift.

The position of Assistant Furnace Operator was created by the Employer in 1988. Walter Snopeck was one of the original successful bidders for that job. He filled the position of Assistant Furnace Operator on the "A Shift," which also operates on a rotation schedule. Snopeck was subsequently bumped from the "A Shift" due to the demotion of another employee. Snopeck then occupied the position of Assistant Furnace Operator on steady day shifts.

At the time the Assistant Furnace Operator vacancy on the "D Shift" was posted in May of 1991, the Union's Business Chairman, Joe Lutecki, spoke with the Employer's Industrial Relations Director about possible recall rights that Mr. Snopeck may have to the "D Shift" vacancy. On May 23, 1991, the Employer's Industrial Relations Director wrote to Mr. Lutecki, stating the Employer's position that Mr. Snopeck did not have recall rights to a particular shift schedule. Accordingly, the opening on the "D Shift" remained posted for bidding.

It appears that three persons bid for the position, with plaintiff being the only woman and having the least seniority. Steve Rugowski was initially awarded the position, but elected not to take the job prior to completing a five-day trial period. It appears that he withdrew from the position after he was

1. The facts presented below are drawn largely from the Union's "Statement of Facts as to Which There Is No Genuine Issue to Be Tried," (Dkt. Entry # 28), and plaintiff's reply thereto (Dkt. Entry # 33).

informed by Union representatives that a grievance would be pursued on behalf of Mr. Snopeck on the ground that the job posting was invalid because Snopeck had recall rights to the position.

Leroy Foster was then awarded the position. He also chose not to complete his training on the job, but there is no contention that he was discouraged from remaining in the position by Union officials.

Plaintiff was finally awarded the position and began her five-day trial period on June 26, 1991. Two days later, the Union filed a grievance with the Employer, contending that Snopeck should have been offered the position on the basis of recall rights.[2]

Plaintiff continued to work as an Assistant Furnace Operator while the Snopeck grievance was processed. Approximately nine months after plaintiff was awarded the job, the Union and the Employer resolved the grievance in Snopeck's favor.

In pursuing the Snopeck grievance, the Union relied upon an arbitration award in favor of another employee, John Berlinski. The Union maintained that the Berlinski arbitration award established recall rights to a preferred shift. Upon learning that the Snopeck grievance had been resolved in his favor, plaintiff contested the applicability of the Berlinski arbitration award to Snopeck's situation. She contended that the Berlinski award was applicable only where a position on a preferred shift was lost due to a reduction in force. Plaintiff argued that because Snopeck had been bumped from his position on the rotating A Shift due to the demotion of another employee from the position of Furnace Operator to Assistant Furnace Operator, Snopeck could not claim recall rights to the "D Shift" vacancy.

Plaintiff sought to file a grievance concerning the award of the position to Snopeck, but was unable to do so. She thereafter filed a complaint with the International Union. By letter dated June 19, 1992, Joseph Cordery,

International Vice President, informed plaintiff that as a result of the resolution of the Snopeck grievance her removal from the position of Assistant Furnace Operator was appropriate.

In June of 1992, Snopeck was permitted to exercise his recall rights, thereby assuming the position of Assistant Furnace Operator on the "D Shift." Plaintiff was thereafter assigned to a temporary position as Assistant Furnace Operator on the rotating "B Shift."[3]

In July of 1992, plaintiff filed a charge with the National Labor Relations Board ("NLRB"), naming as respondents the Union and the Employer. The Union was charged with violating its duty of fair representation by discriminating against plaintiff on the basis of her gender. Following an investigation, the Regional Director refused to issue a complaint and dismissed the case. Plaintiff did not pursue an appeal of this decision within the NLRB.

In January of 1993, the Employer decided to add an Assistant Furnace Operator position on the A Shift. Plaintiff unsuccessfully claimed recall rights to the position. Accordingly, in February of 1993, plaintiff filed a second charge with the NLRB, contending she had been denied recall rights. The Regional Director once again dismissed the charge, and plaintiff did not appeal that determination.

Plaintiff claims that she has been denied the position of Assistant Furnace Operator because of her gender. Specifically, she contends that the Union improperly grieved Snopeck's alleged recall right to prevent a woman from filling the position and then failed to pursue her claim of recall rights when the opening on the A Shift was established in January of 1993. Plaintiff also claims that she was subject to harassment while she worked as an Assistant Furnace Operator. She further contends that the Union permitted a hostile work environment to exist with respect to women.

**2.** It is undisputed that had Snopeck bid on the position he would have prevailed over plaintiff on the basis of greater seniority.

**3.** Plaintiff remained in the position of Assistant Furnace Operator on the rotating "B Shift" until

January of 1993. Her assignment was terminated when the person who was temporarily absent from the job returned. Plaintiff then went back to her previous position in the Selecting Department.

On August 4, 1992, while her first charge with the NLRB was pending, plaintiff filed a complaint against the Union and the Employer with the Pennsylvania Human Relations Commission ("PHRC"), which was referred to the Equal Employment Opportunity Commission ("EEOC") for the purpose of dual filing. An amended complaint was filed with the PHRC on February 13, 1993. Durko received, pursuant to her request, a notice of right to sue from the EEOC on May 21, 1993. This action was then filed.

On July 12, 1994, the Union moved for summary judgment and filed a supporting brief and Statement of Facts pursuant to Local Rule of Court 7.4. Plaintiff filed an opposing brief and statement of facts on July 29, 1994. The Union did not file a reply brief. This matter is now ripe for disposition.[4]

## DISCUSSION

### A.

■ Summary Judgment is appropriate if "the pleadings, depositions, answers to interrogatories and admission on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c). Materiality is determined by the substantive law governing the issues raised by the parties. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "A disputed fact is material if it would affect the outcome of the lawsuit." *U & W Industrial Supply v. Martin Marietta Alumina, Inc.,* 34 F.3d 180, 185 (3rd Cir. 1994).

■ The burden of demonstrating the absence of genuine issues of material fact rests with the moving party regardless of which party has the burden of persuasion at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321–25, 106 S.Ct. 2548, 2551–54, 91 L.Ed.2d 265 (1986). "If . . . the non-movant will bear the burden of persuasion at trial, the party

moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, will be insufficient to carry the non-movant's burden of proof at trial." *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3rd Cir.), *cert. dismiss, Spencer Gifts, Inc. v. Chipollini,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). In making the determination as to whether a plaintiff in an employment discrimination case has marshalled evidence sufficient to withstand a summary judgment motion, " '[i]nferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the [plaintiff].' " *Id.* at 901. Moreover, "any doubts as to the existence of genuine issues of fact are to be resolved against the moving party." *Id.* Only if it can be concluded that there is insufficient evidence for a jury to return a verdict in favor of the non-moving party may summary judgment be granted. *U & W Industrial Supply v. Martin Marietta Alumina, Inc.,* 34 F.3d 180, 185 (3rd Cir. 1994).

### A. *Plaintiff's Disparate Treatment Claim*

■ A labor organization, such as the Union, may not discriminate on the basis of gender and may not cause or attempt to cause an employer to discriminate against an individual because of gender. *See* 42 U.S.C. § 2000e–2(c); 43 Pa.S.A. § 955. Essentially, plaintiff complains of "disparate treatment" by the Union. Accordingly, whether plaintiff can withstand the Union's summary judgment motion depends upon whether there is evidence that the Union intentionally discriminated against plaintiff because of her gender. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2753, 125 L.Ed.2d 407 (1993); *Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). This burden may be satisfied by either direct or indirect evidence. *See Healy v. New York Life Ins. Co.,* 860 F.2d 1209, 1214 (3rd Cir.

---

**4.** The Employer separately moved for summary judgment. By Memorandum and Order dated September 14, 1994, the Employer's summary judgment motion was denied. It should be noted

that the Employer did not seek summary judgment on the question of whether plaintiff was able to present sufficient evidence to warrant submission of her case to a jury.

1988), *cert. denied,* 490 U.S. 1098, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989).

■ In assessing the sufficiency of evidence to withstand a summary judgment motion, the Court must make a determination as to whether the plaintiff is presenting a "pretext" case or a "mixed motives" case. *See Sunners v. PaineWebber, Inc.,* 1994 WL 496555, 1994 U.S.Dist. Lexis 12640 (D.N.J. Aug. 31, 1994). As explained by the Third Circuit in *Griffiths v. Cigna Corp.,* 988 F.2d 457 (3rd Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 186, 126 L.Ed.2d 145 (1993), a mixed motives case involves proof of both discriminatory and non-discriminatory reasons motivating the defendant's conduct. *Id.* at 469. In a pretext case, either legitimate or illegitimate factors—but not both—were taken into account in making the employment decision. *Id.* at 468–69. "Whether a pretext of a mixed motives case has been presented depends on the kinds of circumstantial evidence the employee produces in support of [the] claim of illegal discrimination." *Hook v. Ernst & Young,* 28 F.3d 366, 373 (3rd Cir.1994). A mixed motives case will be recognized where plaintiff has proffered evidence that may "'fairly be said to directly reflect' the alleged unlawful basis" for the challenged conduct. *Hook,* 28 F.3d at 374. In presenting a case under the mixed motives theory, "the plaintiff does not argue that legitimate motives articulated by the employer did not motivate the employment decision. Rather, the plaintiff contends that additional, improper motives played a role in causing that decision." *Griffiths,* 988 F.2d at 469.

■ In this case, plaintiff has not contended that the Union's conduct was motivated, in part, by legitimate reasons. Moreover, at a pretrial conference, counsel for plaintiff indicated that he believed he was presenting a "pretext" case. Accordingly, for purposes of the summary judgment motion, plaintiff's case will be regarded as a "pretext" case.[5]

■ In order to prevail at time of trial in a "pretext" case plaintiff will have to establish by a preponderance of the evidence that her gender "played a role in [the Union's decision making] process and had a determinative influence on the outcome." *Hazen Paper Co. v. Biggins,* — U.S. —, —, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993). Plaintiff, however, need not establish that gender was the *sole* reason for disparate treatment. That is, plaintiff need only show that "but for the protected characteristic," the adverse employment decision would not have been made. *Fuentes v. Perskie,* 32 F.3d 759, 764 (3rd Cir.1994) (emphasis in original).

■ In a "pretext" case, a plaintiff will defeat a summary judgment motion when evidence is submitted which "(1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a fact finder could reasonably conclude that each reason was a fabrication; or (2) allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Id.,* at 762. Where a defendant moves for summary judgment on the ground that legitimate, non-discriminatory reasons motivated its conduct, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the [contested] action." *Id.,* at 764.[6] If the evidence present-

---

5. In a mixed motives case "the plaintiff establishes a *prima facie* case by proving that a characteristic protected under federal law was a significant or motivating—but not a determinative—factor in the employment decision." *Sunners,* 1994 WL 496555, *7, 1994 U.S.Dist. LEXIS 12640, *7. Once plaintiff meets this burden, the defendant must prove that its action would have been taken regardless of the forbidden motives. *Id.* The elements for a *prima facie* case and the shifting burden of going forward with evidence in the pretext case are discussed *infra*.

6. At trial, a jury conclusion that plaintiff has demonstrated that the Union's proffered reasons are pretextual will not necessarily require a verdict in her favor. *St. Mary's Center v. Hicks,* — U.S. at —, 113 S.Ct. at 2754 ("It is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.")

ed by the plaintiff is sufficient to permit a trier-of-fact to reach either of these conclusions, summary judgment is unwarranted. As explained by our Court of Appeals, "if the plaintiff has pointed to some evidence discrediting the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case." *Id.,* at 764. *Sunners,* 1994 WL 496555 at *7, 1994 U.S.Dist. Lexis 12640 at *12. "[T]he plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder to reasonably infer that each of the [defendant's] proffered non-discriminatory reasons was either a *post-hoc* fabrication or otherwise did not actually motivate the employment action...." *Fuentes,* 32 F.3d at 764.

▮ The elements of a *prima facie* case against a labor organization are not identified by the parties. To the extent that the analytical framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1983), is applicable, plaintiff has presented a *prima facie* case. There is no dispute that plaintiff belongs to a protected category and that she is fully qualified for the position of Assistant Furnace Operator. There is also no dispute that she was removed from this position and that it was filled by a male. She claims that Snopeck's placement in the position was inconsistent with her rights under the collective bargaining agreement. Thus, a *prima facie* case has been presented. *See Williams v. Lehigh Valley Carpenters Union Local 600,* 1992 WL 247291, 1992 U.S.Dist. LEXIS 15960 (E.D.Pa.1992). Under *McDonnell Douglas,* the burden thus shifts to the defendant to articulate a legitimate, non-discriminatory reason for its conduct. The Union argues that it pursued the Snopeck grievance on the basis of the Berlinski arbitration award, and that the Berlinski award had been applied to female members of the Union. For purposes of the Union's summary judgment motion, it will be assumed that the Union has proffered a " 'legitimate, nondis-

criminatory reason' " for its conduct in relation to the Snopeck grievance. *Fuentes, supra,* 32 F.3d at 763. Thus, the issue to be decided on this summary judgment motion is whether plaintiff can present sufficient evidence to permit a conclusion that the reasons offered by the Union are pretextual or that her gender more likely than not motivated the Union's action. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *Griffiths v. CIGNA Corp.,* 988 F.2d at 472.

In support of her assertion that the Union's articulated rationale for pursuing the Snopeck grievance is not worthy of belief, plaintiff points to the following circumstantial evidence:

The Union did not file a grievance until after the position had been awarded to Plaintiff, and failed to file a grievance when the position was initially filled by Mr. Rugowski and by Mr. Foster.[7]

The filing of the Snopeck grievance was untimely inasmuch as Article 11, Section 3 of the Collective Bargaining Agreement provided a maximum period of 15 days from the date the grievance arose within which to present the written grievance. In this regard, it is clear that by May 23, 1991, the employer had informed the Union that it would not recognize recall rights for Mr. Snopeck, but the grievance was not filed until June 28, 1991.

Contrary to Snopeck's assertion that he preferred a rotating shift, his shift preference on file with the Employer was for a five-day steady shift.

Snopeck had never worked on the "D Shift" as an Assistant Furnace Operator, and the Berlinski arbitration award could not be read as recognizing a recall right to a shift that an employee had not worked.

▮ This evidence, of course, is not direct evidence of a discriminatory animus. It does, however, cast substantial doubt on the

---

**7.** In response to the contention of Mr. Lutecki that the grievance had not been filed to challenge the bids of Rugowski or Foster because he did not feel a grievance could be filled until after the

five day trial period had expired, plaintiff points out that when the Union did file its grievance her five day trial period had not yet expired.

veracity of the Union's articulated reason for pursuing the Snopeck grievance. *See Fuentes, supra*, 32 F.3d at 765 (plaintiff has the burden of casting doubt on defendant's articulated reasons for an employment decision). Based upon this evidence, a reasonable jury could rationally find the Union's assertion of a non-discriminatory application of an arbitration award to be "unworthy of credence." *Ezold v. Wolf, Block, Schorr & Solis–Cohen*, 983 F.2d 509, 531 (3rd Cir. 1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993). This conclusion is buttressed by plaintiff's proffer of evidence that she was told that she had "broken the barrier" by successfully bidding on the Assistant Furnace Operator position and that no permanent Assistant Furnace Operator or Furnace Operator position had ever been held by a woman. Accordingly, the Union is not entitled to summary judgment on plaintiff's "disparate treatment" claim.[8]

### B. *Hostile Work Environment*

Plaintiff's complaint in this action includes the following allegation:

[The employer and the Union] have maintained a hostile work environment with respect to women inasmuch as Plaintiff and other women have been subject to frequent offensive comments pertaining to their bodies, suggestive and lewd remarks, and comments concerning their attire. [Complaint (Docket Entry # 1, ¶ 60).]

This allegation serves as the springboard for a claim against the Union for relief based upon a "hostile work environment."

The Union contends that the Employer bears the responsibility for taking appropriate action in response to complaints of sexual harassment and a hostile work atmosphere. In support of this contention, the Union notes that under the Collective Bargaining Agreement, the Employer has the exclusive right to discipline employees and supervise the work environment.[9] Apparently, it is the Union's position that it is powerless to act where a female Union member has been the victim of a pattern of sexual harassment by male Union members.

The Union's position is untenable. In *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), the United Steelworkers of America and two of its local unions argued that they could not be held liable under Title VII for failure to pursue racial discrimination grievances on behalf of black union members. The facts revealed:

that since 1965, the collective-bargaining contract contained an express clause binding both the employer and the Unions not to discriminate on racial grounds; that the employer was discriminating against blacks in discharging probationary employees, which the Unions were aware of but refused to do anything about by way of filing proffered grievances or otherwise; that the Unions had ignored grievances based on instances of harassment which were indisputably racial in nature; and that the Unions had regularly refused to include assertions of racial discrimination in grievances that also asserted other contract violations. *Goodman*, 482 U.S. at 666, 107 S.Ct. at 2623–24.

In affirming the judgment against the unions on the basis of these facts, the Court endorsed the following proposition:

---

**8.** In view of the determination that the Union is not entitled to summary judgment with respect to the removal of plaintiff from the position of Assistant Furnace Operator as a result of the Snopeck grievance, there is no need to decide whether plaintiff has presented sufficient evidence concerning the failure of the Union to pursue a grievance on her behalf in connection with claimed recall rights when a position of Assistant Furnace Operator on the "A Shift" was established in January of 1993. It must be noted, however, that the Union has persuasively argued that recall rights are not recognized when a job has been filled improperly. In this regard, the facts of record suggest that plaintiff was not in the same position as Snopeck when he was bumped from the Assistant Furnace Operator on the "A Shift" to a steady five day shift.

**9.** Article 8 of the Collective Bargaining Agreement, in pertinent part, provides:

The Union recognizes the right and responsibility of the Company to manage its plant and to direct its working forces. All rights of the Company which have not been specifically abridged or modified by this Contract are retained by the Company.

'A union which intentionally avoids asserting discrimination claims, either so as not to antagonize the employer and thus improve its chances of success on other issues, or in deference to the perceived desires of its [male] membership, is liable under ... Title [VII]....' *Id.* at 669, 107 S.Ct. at 2625.

In language particularly apropos here, the Court concluded:

[Title VII does] not permit a union to refuse to file any and all grievances presented by a [woman] on the ground that the employer looks with disfavor on and resents such grievances. *It is no less violative of these laws for a union to pursue a policy of rejecting disparate-treatment grievances presented by [women] solely because the claims assert [sexual] bias and would be very troublesome to process. Id.* [emphasis added].

▆▆▆▆▆ Although the factual presentation made by plaintiff in this case is not as compelling as that revealed in *Goodman,* plaintiff's showing is sufficient to withstand summary judgment on the issue of maintaining a hostile work environment. As in *Goodman,* the Collective Bargaining Agreement in this case specifically provides:

There shall be no discrimination by either the Company or the Union against any employee because of ... sex in the administration and application of the contract.... [Article XIII of the Collective Bargaining Agreement, ¶ 86].

Plaintiff has submitted an affidavit attesting to incidents of harassment, offensive remarks, and gender-motivated discrimination. She has also indicated that complaints she voiced to Union leadership were ignored. Although the Union contends that plaintiff's allegations are too general, the Court finds that they are sufficient to create a genuine dispute as to (a) whether she had been subjected to a hostile work environment; (b) whether she had requested action on the part of her Union, and (c) whether the Union ignored her request for action. Accordingly, the Union's summary judgment motion on the hostile work environment issue must be denied.[10]

## CONCLUSION

In response to the Union's assertion that it properly pursued a grievance on behalf of a male Union member to displace plaintiff as the Employer's only female Assistant Furnace Operator, plaintiff has presented evidence that at least casts sufficient doubt on the veracity of the Union's position and suggests that her gender may have been the real motivating influence for the Union's actions. In reply to the Union's claim that it cannot be held responsible for pervasive sexual harassment, plaintiff has presented facts sufficient to call into question whether Union official's failed to take action to redress a hostile work environment. Accordingly, summary adjudication of the Union's liability is inappropriate.[11]

**10.** The Union's reliance upon cases addressing the issue of a labor organization's obligations to protect the general public from union members, *e.g., Lizzi v. Letter Carriers,* 755 F.Supp. 68 (E.D.N.Y.1991), or a union's duty concerning safety in the workplace, *e.g., Ryan v. International Union of Operating Engineers Local 675,* 794 F.2d 641 (11th Cir.1986), is misplaced. This case does not involve a question as to whether a duty to not discriminate exists. By statute, the Union has a duty to treat its members equally, without differentiation on the basis of gender, 42 U.S.C. § 2000e–2(c)(1), and cannot, with impunity, "cause or attempt to cause an employer to discriminate" on the basis of gender. 42 U.S.C. § 2000e–2(c)(3). *See also* 43 Pa.C.S.A. § 955.

These duties are reaffirmed by the Collective Bargaining Agreement. Failure to take action to protect a member from a pervasive pattern of sexual harassment can indeed violate these statutory and contractual duties. *See Goodman, supra.*

**11.** In light of the denial of the Union's challenges to plaintiff's claims concerning the Snopeck grievance and hostile work environment, the Court is of the opinion that the sufficiency of plaintiff's evidence as to specific matters such as testing, overtime pay, etc., is best addressed after presentation of evidence at trial.